## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-62737-BLOOM/Valle

ARMEN A. TEMURIAN and VISTA
TECHNOLOGIES, LLC,

      Plaintiffs,

v.

PHILLIP A. PICCOLO, JR., KEVIN
DALTON JOHNSON, PAUL MORRIS,
JOSEPH REID, and TRAVELADA, LLC,

      Defendants.

_____/

### ORDER ON MOTION TO DISMISS AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendants Phillip A. Piccolo, Jr., Kevin Dalton

Johnson, Paul Morris, Joseph Reid, and Travelada LLC's (collectively, "Defendants") Motion to

Dismiss Amended Complaint for Failure to State a Claim, ECF No. [36] (the "Motion"). The

Court has reviewed the Motion, all supporting and opposing filings, the record in this case, and

the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is

**GRANTED**.

### I.    BACKGROUND

    This case arises as a result of a breakdown in the relationship between Plaintiffs, Armen

A. Temurian ("Temurian") and Vista Technologies LLC ("Vista") (together, "Plaintiffs") and

Defendants, Phillip A. Piccolo, Jr. ("Piccolo"), Kevin Dalton Johnson ("Johnson"), and Paul

Morris ("Morris") (collectively, "PJM Defendants"), based on Defendant Joseph Reid's ("Reid")

recommendation, that Plaintiffs hire the PJM Defendants to develop a back office software system

and interface for Vista ("Back Office"). In the First Amended Complaint, ECF No. [33], Plaintiffs

allege that, among other things, Defendants misappropriated Vista's trade secrets, stole Vista's assets, fraudulently used Vista's customer lists, and misled customers to use Travelada, LLC ("Travelada").  ECF No. [33] ¶¶ 1-7.

Vista is a technology company that sells a hardware product called the Vista Mini Miner ("Mini Miner").  *Id.* ¶ 18.  Before the release of the Mini Miner, Vista searched for a developer to create a custom-built administrative software suite to manage its sales and shipping, handle its records, and give Vista and its customers a platform to monitor Mini Miner usage, which it calls the Back Office.  *Id.* ¶ 22.  The Back Office would store confidential and proprietary electronic data necessary to access the digital wallets that contain Vista and its customers' funds.  *Id.* ¶ 23. In November 2017, Temurian met Reid, who introduced him to Piccolo and Johnson.  *Id.* ¶ 24. Plaintiffs allege that Reid represented Piccolo and Johnson to be close acquaintances he had known for decades, and that they were "trustworthy," "legitimate" software developers, and recommended that Vista hire them as a software development team.  *Id.*

Plaintiffs allege that on or about December 5, 2017, Temurian went to Florida on behalf of Vista to meet with the PJM Defendants, including Morris, who Temurian met on or about that day as well.  *Id.* ¶ 26.  Temurian entered into an oral agreement with the PJM Defendants, which included, in pertinent part, that "(1) the Back Office was to be delivered by February 2018; (2) Vista would maintain ownership of the Back Office; (3) Temurian would acquire Travelada; and (4) the PJM Defendants would relinquish control of the Back Office to Vista upon its completion." *Id.*  In return for their efforts, the PJM Defendants would receive $2,000 per business day in bitcoin until completion of the job.  *Id.*  In order to develop the Back Office, the PJM Defendants were allowed temporary special access of Vista's records, sales logs, customer profiles, and customer lists to upload information into the Back Office.  *Id.* ¶ 28.  Plaintiffs allege that such information

was confidential, password-protected, and contained proprietary and trade secret information.  *Id.* ¶¶ 28, 31.

Plaintiffs also contend that on or about January 20, 2018, the PJM Defendants registered the domain name, Vistaone.network, without Plaintiffs' authorization. It features the exact same Vista logo, same or similar Vista web design, and purports to sell Mini Miners.  *Id.* ¶ 32.  On January 26, 2018, Plaintiffs executed a written contract with Piccolo and Johnson, doing business as K.F.I. Software, in return for assets and a 10% ownership interest in all of Vista's current and future direct and indirect entities.  *Id*. ¶ 34; ECF No. [43-1] (the "Agreement").  Plaintiffs further allege that on January 31, 2018, Johnson fraudulently transferred 50 bitcoin and 100 ether from Vista's digital cryptocurrency wallet, and that on February 2, 2018, Morris transferred 8 bitcoin and 8 ether from Vista's digital wallet into his own wallet.  ECF No. [33] ¶¶ 37-38.  In February 2018, Johnson and Reid created false customer profiles and received thousands of dollars in unearned commissions.  *Id.* ¶¶ 39-41.

Between February 26, 2018 and March 20, 2018, Johnson used his Back Office access to order twelve Mini Miners, each of which was worth approximately $1,495.00, totaling $17,940.00 to ship to twelve individuals.  *Id.* ¶ 44.  Johnson also deleted orders and pocketed the revenue for at least two Mini Miner orders place on March 8, 2018 and March 27, 2018.  *Id.* ¶ 46.  Between February and May 2018, Vista allegedly received many complaints from customers that amounts appeared and disappeared in their cryptocurrency accounts without explanation.  *Id.* ¶ 48.  As a result of the unauthorized transfers, the goodwill and reputation Vista has built among its customers has been eroded.  *Id.* ¶ 50.

On or around March 29, 2018, Temurian met with the PJM Defendants, after finding out about the PJM Defendants' schemes.  *Id*. ¶ 51.  Shortly after the meeting, the PJM Defendants

altered and deleted incriminating information, disabled Plaintiffs' ability to log into the Back Office, and "made it impossible to get a full and complete understanding of the nature of their fraud or the extent of the damages they caused." *Id.* ¶ 52-53. The PJM Defendants and Travelada also used Vista's customer list to send mass email solicitations that reference Vista's product offerings to advertise their Travelada business to Vista's customers and made prominent references to Vista's trade name or the Mini Miner mark. *Id*. ¶¶ 55-70. Johnson and Piccolo have used threats to extort Vista. *Id.* ¶ 76.

As a result, Plaintiffs assert numerous claims against Defendants, including breach of contract against the PJM Defendants (Count 1); conversion against the PJM Defendants and Travelada, Johnson, Reid and Morris (Counts 2-5); fraudulent misrepresentation against Reid (Count 6); fraudulent concealment against the PJM Defendants and Reid (Count 7); fraud in the inducement against the PJM Defendants and Reid (Count 8); tortious interference against the PJM Defendants and Travelada (Count 9); civil conspiracy against the PJM Defendants, Reid, and Travelada (Count 10); trademark infringement and unfair competition under the Lanham Act and common law against the PJM Defendants and Travelada (Counts 11-12); violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against the PJM Defendants and Travelada (Count 13); unjust enrichment against Johnson and Reid (Count 14); misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and Florida's Uniform Trade Secrets Act ("FUTSA") against the PJM Defendants (Counts 15-16); constructive trust against the PJM Defendants (Count 17); breach of fiduciary duty against Piccolo and Johnson (Count 18); and aiding and abetting a breach of fiduciary duty against Reid (Count 19). *See id.* ¶¶ 81-233.

In the instant Motion, Defendants request dismissal of part of Count 3 based on the alleged stealing of revenue for two Mini Miner orders against Johnson, Counts 4, 6-13, and 15-17.

## II.     LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605

F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).  A court considering a Rule

12(b) motion is generally limited to the facts contained in the complaint and attached exhibits,

including documents referred to in the complaint that are central to the claim.  *See Wilchombe v.*

*TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433

F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may

still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.")

(citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III.  DISCUSSION

### A.  *Conversion (Counts 3 and 4)*

Defendants seek dismissal of Plaintiffs' conversion claims, including Count 4 and part of

Count 3, on the basis that the alleged revenues and commissions are not specifically identifiable.[1]

Florida law defines the tort of conversion as "the wrongful exercise of dominion or control over

property to the detriment of the rights of one entitled to possession."  *United States v. Bailey*, 288

F. Supp. 2d 1261, 1269 (M.D. Fla. 2003) *aff'd*, 419 F.3d 1208 (11th Cir. 2005) (citing *Bel-Bel Int'l*

*Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998)); *see Nat'l Union Fire*

*Ins. Co. of Pa. v. Carib. Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) ("Conversion is an

unauthorized act that deprives a person of his property permanently or for an indefinite time.").

"An action for conversion of money consists of three elements: specific and identifiable money, a

---

[1] Defendants are not seeking dismissal with respect to the portion of Count 3 based upon conversion of
cryptocurrency.  ECF No. [36], at 5, n.6.  In fact, Defendants concede that "Plaintiffs' allegations are
arguably sufficient to state a claim for conversion of cryptocurrency," as to Johnson's removal of 50 bitcoin
and 100 ether from Vista's cryptocurrency wallet to his own digital wallet without authorization, and as to
Johnson's order and shipment of twelve Mini Miners to twelve individuals.  *Id.* at 4-5; *see* ECF No. [33]
¶¶ 97-101.  However, the Defendants assert that Plaintiffs have failed to adequately allege a claim for
conversion with respect to the alleged stealing of revenues for at least two Mini Miner orders, which were
placed on March 8, 2018 and March 27, 2018.  ECF No. [33] ¶102.  Thus, the Court only decides whether
the Plaintiffs adequately allege a claim for conversion based on the alleged stealing of revenues.

deprivation of money belonging to another, and an unauthorized act, which deprives another of his money." *Navid v. Uiterwyk Corp.*, 130 B.R. 594, 595-596 (M.D. Fla. 1991); *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009).  Although the Eleventh Circuit has yet to decide whether cryptocurrencies are considered "money" for the purposes of a claim of conversion, other district courts have held that they do for the purposes of federal money laundering statutes.  *See e.g., United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014); *see also SEC v. Shavers*, No. 4:13-CV-416, 2013 WL 4028182, at *2 (E.D. Tex. Aug. 6, 2013) ("It is clear that Bitcoin can be used as money.  It can be used to purchase goods or services . . . .  [I]t can also be exchanged for conventional currencies . . . .").

Defendants argue that Plaintiffs' allegation that Johnson stole the revenue for at least two Mini Miner orders is not specific because the alleged theft of revenues is undefined and not detailed as to the form of the alleged revenues.  Plaintiffs respond that they have alleged that the converted revenues were in the form of Bitcoin.  However, in the First Amended Complaint, Plaintiffs do not allege in what form the alleged converted revenues were.  Rather, Plaintiffs state only that Johnson "delete[d] customer orders and pocket[ed] the revenue," and "deleted orders from the Back Office and stole the revenue for at least two Mini Miner orders."  ECF No. [33] ¶¶ 46, 102.  Plaintiffs do not include a serial number, what form the alleged converted revenues were in, or any specific and identifiable funds.  Without alleging what form the converted revenues were in, Plaintiffs cannot sufficiently allege a cause of action for conversion for the alleged stealing of revenues.  *See Talisman Capital Alt. Invs. Fund, Ltd. v. Mouttet*, 493 B.R. 640, 662 (Bankr. S.D. Fla. 2013) ("Money cannot be converted unless the money is a specifically identifiable fund such as an escrow account, a bag of gold coins, or the like.").

Plaintiffs contend that the Court should consider the purchase orders attached to their Response, ECF No. [43], to find that the revenues are specifically identifiable. Plaintiffs direct the Court to the purchase orders that show the amount paid for each Mini Miner. *See* ECF No. [43-2] ("Purchase Orders").  However, the Court notes that the Purchase Orders are largely illegible and do not state what specific funds amount to the purported stolen revenues. *Id*.  Moreover, The Eleventh Circuit has "repeatedly [ ]held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x. 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)).  *See also Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though, cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint.") (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  Therefore, the Court finds that Plaintiffs do not state a claim for conversion in Count 3 to the extent that such claim is based on the alleged stealing of revenues for at least two Mini Miner orders.

Defendants request dismissal of the claim of conversion asserted against Johnson and Reid in Count 4 for similar reasons—because it is based on the alleged receipt of unauthorized and unearned commissions.  Plaintiffs argue that the commission funds are specific and identifiable since they are traceable through the Back Office and that the extent of the fraud is unknown due to the PJM Defendants allegedly disabling Plaintiffs' access to the Back Office.

"Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970).  "This identification requirement ensures that a

fund of money actually exists to pay a specific debt owed and the claimant is not merely transforming a contract dispute into a conversion claim." *Tambourine,* 312 F. App'x at 272 (citing *Allen v. Gordon*, 429 So. 2d 369, 371 (Fla. 1st DCA 1983)).

Here, Plaintiffs allege that Johnson used "unauthorized Back Office access to falsify unearned commission payments for himself and Reid on Vista's products." ECF No. [33] ¶ 107. Plaintiffs assert that Johnson and Reid allegedly "would receive unauthorized and unearned commissions" and "improperly diverted thousands of dollars in unearned commissions . . . from approximately February to April 2018." *Id.* ¶ 110-11. Plaintiffs then acknowledge that the "commissions descend in value the further they are in the sales chain from the originating buyer." *Id.* ¶ 108. The Plaintiffs further allege that the "commission conversion is currently unknown and such information is peculiarly within [the Defendants'] knowledge and control." *Id.* ¶ 112.

Upon review, the Court finds that Plaintiffs' conclusory allegations that Johnson diverted thousands of dollars in unearned commissions and that both Johnson and Reid would receive unauthorized and unearned commissions do not state specific and identifiable funds necessary for a conversion claim. Plaintiffs are correct that "[c]onversion would have been applicable had the commissions been specifically identifiable funds of the plaintiff; and had the defendants deprived the plaintiff of its funds with an intent to do so for an indefinite time," *Capital Partners Inv. Co. v. Am. Inv. Grp., Inc.*, 500 So. 2d 249, 250 (Fla. 4th DCA 1986). However, in the present case, the alleged commissions are not specific and identifiable, other than constituting "thousands of dollars." "Where the parties have an open account, and the defendant is not required to pay the plaintiff identical moneys which he collected, there can be no action in tort for conversion."

*Belford Trucking Co.*, 243 So. 2d at 648.  Accordingly, Plaintiffs have not adequately stated a claim for conversion, and Count 4 is due to be dismissed.[2]

### B. *Fraud Claims (Counts 6-8)*

Defendants seek dismissal of Plaintiffs' fraudulent misrepresentation claim against Reid, fraudulent concealment claim against the PJM Defendants and Reid, and fraud in the inducement claim against the PJM Defendants and Reid.  Since these fraud claims have similar pleading standards, the Court analyzes them together.

Defendants first seek dismissal of Plaintiffs' fraudulent misrepresentation claim against Reid, arguing that statements of opinion are not actionable as fraud under Florida law.  "There are four elements necessary to establish fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representer's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation."  *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. 1st DCA 2011) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).  A fact is material when, but for the misrepresentation, the aggrieved party would not have entered into the contract. *See Ribak v. Centex Real Estate Corp.*, 702 So. 2d 1316, 1317 (Fla. 4th DCA 1997); *see also State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1213 (Fla. 5th DCA 1995) ("[t]he false statement must pertain to a material fact").  As such, the misrepresentation must concern a material fact, rather than a mere opinion or a misrepresentation of law.  *Chino Elec., Inc. v. U.S. Fid. & Guar. Co.*, 578 So. 2d 320, 323 (Fla. 3d DCA 1991).  "A plaintiff may not maintain an action for

---

[2] Plaintiffs further contend that Fed. R. Civ. P. 9(b)'s heightened pleading standard may be relaxed where specific information is "peculiarly within the defendant's knowledge or control."  *See* ECF No. [43], at 8. However, Rule 9(b)'s pleading standard does not apply to conversion claims. *See* Fed. R. Civ. P. 9(b) ("In alleging *fraud or mistake*, a party must state with particularity the circumstances constituting *fraud or mistake*" (emphasis added).

fraud based on misrepresentations that were in the form of opinions and not statements of existing, material facts." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342 (S.D. Fla. 2011) (internal citations omitted).  "A statement of opinion, such as . . . '[p]uffing' is not to be taken seriously, is not to be relied upon, and is not binding as a legal obligation or promise." *Id.*

"The threshold determination regarding whether the representation is a fact or an opinion requires consideration of the surrounding circumstances." *Grimes v. Lottes*, 241 So. 3d 892, 896 (Fla. 2d DCA 2018); *see Tres-AAA-Exxon v. City First Mortg., Inc.*, 870 So. 2d 905, 907 (Fla. 4th DCA 2004).  "Where the representation 'can be viewed as coming from one with superior knowledge of the subject of the statement,' the representation should be treated as a fact." *Grimes*, 241 So. 3d at 896-97 (citation omitted).

Here, Plaintiffs allege that Reid told Temurian "that Piccolo and Johnson were trustworthy, legitimate software developers, and that they were a legitimate software development team." ECF No. [33] ¶ 121.  Plaintiffs further allege that Reid knew his statements were false because "he was aware of numerous allegations that Piccolo had engaged in fraudulent behavior in the past, and that the PJM Defendants intended to perpetrate a range of fraudulent schemes." *Id.* ¶ 122. Plaintiffs contend that Reid knew that the "statements were material because Vista would not have entered into the Agreement if it had known of those facts," and Reid intended to use the statements to induce Vista's reliance and to encourage Temurian, on behalf of Vista, to enter the Agreement, and that Vista in fact relied on the statements when it entered the Agreement.  *Id.* ¶¶ 122-24. Plaintiffs argue that Reid's statements should be treated as factual representations, even if Reid's statements are construed as opinions, since Reid was someone with superior knowledge of the subject of the statements.  Plaintiffs further argue that, in any event, the determination of whether a statement is an opinion should not be made at this juncture.  The Court disagrees.  It is the

responsibility of the buyer of a product or service to investigate the truth of any "puffing" statements, as such declarations "do not constitute fraudulent misrepresentations." *See Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995) ("[S]tatements that [a] building was 'a very good building' requiring 'normal type of maintenance,' and 'an excellent deal,' were clearly statements of opinion."). Here, the alleged fraudulent statements were that Piccolo and Johnson were "trustworthy" and "legitimate." In addition, when alleging the fraudulent misrepresentation claim, Plaintiffs do not allege that Reid had superior knowledge about the legitimacy and trustworthiness of the PJM Defendants. As such, under the circumstances, the Court finds that Reid's statements that Piccolo and Johnson were trustworthy and legitimate are statements of opinion, and therefore, not actionable. Accordingly, Count 6 is dismissed.[3]

Defendants next seek dismissal of Plaintiffs' claim of fraudulent concealment against the PJM Defendants and Reid, arguing that Reid and the PJM Defendants had no duty to disclose. In response, Plaintiffs contend that Reid had a duty to disclose numerous allegations that Piccolo had engaged in fraudulent behavior in the past and the PJM Defendants had a duty to disclose their intent to retain access to the Back Office.

In order to state a claim for fraudulent concealment, a plaintiff must allege that:

(1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew the concealment of or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) there was detrimental reliance on the misinformation.

---

[3] Additionally, Plaintiffs fail to meet the particularity requirement of Rule 9(b) for fraudulent misrepresentation. Plaintiffs' Complaint does not specify: (1) where the statements were made; (2) the time the statements were made; and (3) how Reid benefitted from the alleged fraudulent conduct. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380-81 (11th Cir. 1997); *see also Mukamal v. GE Capital Corp.*, 517 B.R. 310, 337 (Bankr. S.D. Fla. 2013) ("Circumstances constituting fraud which must be pled with particularity include such matters as time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.") (citation and quotations omitted).

*Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013); *see Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015). "[A] duty to disclose arises 'when one party has information that the other party has the right to know because of the fiduciary or other relationship of trust or confidence between them.'" *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1429-30 (S.D. Fla. 1996) (citing *State v. Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995), *reh. denied*, May 24, 1995).

At the outset, the Court notes that Plaintiffs' fraudulent concealment claim with respect to Reid fails to the extent that it is premised upon Reid's failure to disclose additional details about Piccolo based upon his statements that he (and Johnson) are "trustworthy" and "legitimate," because the Court has already determined that those statements are not actionable as fraud.

In support of their contention that the PJM Defendants had a duty to disclose their lack of intention to construct and relinquish the Back Office and their true intention to commit fraud, Plaintiffs contend that Reid was acting as their agent, which created "an implied fiduciary duty to disclose the allegations against Piccolo," ECF No. [33] ¶¶ 130-32, and otherwise that they had a duty to disclose because they disclosed some, but not all, information about their intentions when making the Agreement. The Court considers each argument in turn.

"A fiduciary relationship which is implied in law is based on the specific factual circumstances surrounding the transaction and the relationship of the parties." *First Nat'l Bank & Tr. Co. of Treasurer Coast v. Pack*, 789 So. 2d 411, 415 (Fla. 4th DCA 2001) (citations omitted). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009). Generally, "in an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or

protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." *Id.* (citing *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993)); *see also Lanz v. Resolution Tr. Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991) (citing *Metcalf v. Leedy, Wheeler & Co.*, 191 So. 690 (1939)) ("In an arms length transaction however, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own due diligence have discovered.").

Plaintiffs' allegations are insufficient to give rise to an implied fiduciary duty because they do not evidence anything more than an arms-length transaction.  Moreover, Reid did not start to disclose material facts by stating that the PJM Defendants were legitimate and trustworthy, given that the Court has determined that his statements were non-actionable opinions.  Thus, Plaintiffs do not sufficiently allege that Reid had an obligation to disclose alleged concealed facts and alleged fraudulent intentions.[4]  Moreover, Plaintiffs' conclusory assertion that Reid was acting as an agent for the PJM Defendants is insufficient to plausibly allege a special relationship that would impose upon Reid a duty to relay information about the PJM Defendants to Plaintiffs in an otherwise arms-length transaction.  *See F.D.I.C. v. Floridian Title Grp., Inc.*, 972 F. Supp. 2d 1289, 1297 (S.D. Fla. 2013) ("Typically, an agent has a duty to disclose to a principal all material facts relevant to the agency.") (citation omitted).  Absent a relationship that would give rise to a duty to disclose material facts, the Court finds that the fraudulent concealment claim fails, and Count 7 is due to be dismissed.[5]

---

[4] In the First Amended Complaint, Plaintiffs further allege that Reid "was a party to the Agreement as a third-party beneficiary." *Id.*  Defendants respond that the oral agreement does not reflect any intended third-party beneficiaries.  ECF No. [36], at 9.  Plaintiffs fail to address that argument.  Here, the First Amended Complaint does not allege sufficient facts to suggest that the Plaintiffs intended Reid to benefit from the oral agreement.

[5] Additionally, the Plaintiffs' claim for fraudulent concealment is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).  *Aprigliano*, 979 F. Supp. 2d at 1341-42 (applying the heightened

Defendants also argue that Plaintiffs' fraudulent concealment and fraud in the inducement claims as to the PJM Defendants are barred by the independent tort doctrine.  In response, Plaintiffs contend that the fraudulent inducement and fraudulent concealment claims focus on the PJM Defendants' alleged fraudulent statements and concealment of their true intentions, rather than the breach of the oral agreement.  "Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract."  *HTP, Ltd. v. Lineas Aereas Costarricenses*, 685 So. 2d 1238, 1239 (Fla. 1996).  Though Florida's economic loss doctrine extends only to products liability cases, "[f]undamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations."  *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584-Orl-22TBS, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 407-09 (Fla. 2013)).  "Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."  *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994).

Here, the claims and damages arise from Defendants' alleged breach of the agreement to provide a custom-built Back Office and to relinquish control of the Back Office once it was constructed.  *See* ECF No. [33] ¶¶ 141, 153.  Accordingly, the breach of contract claim and fraud claims against the PJM Defendants are inextricably intertwined. The independent tort doctrine bars the fraud in the inducement and fraudulent concealment claims as to the PJM Defendants.  *See*

---

pleading requirement of Rule 9(b) to claim for fraudulent concealment).  The Court finds that the Plaintiffs' conclusory allegations are insufficient to meet Rule 9(b)'s heightened pleading standard.  Thus, Plaintiffs have failed to adequately plead a claim for fraudulent concealment with the requisite level of specificity required by the Federal Rules of Civil Procedure.  Accordingly, Count 7 is due to be dismissed upon this basis as well.

*HTP*, 685 So. 2d at 1239.  Count 7 and Count 8 are dismissed upon this basis and the Court need not consider Defendants' remaining arguments.

### C. *Tortious Interference as to the PJM Defendants (Count 9)*

Defendants seek dismissal of Plaintiffs' tortious interference claim against the PJM Defendants.   Under Florida law, "[t]he elements of tortious interference with a business relationship are '(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'"  *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015).   The "intentional and unjustified" inquiry is "fact-intensive . . . [and] requires an examination of the defendant's conduct, its motive, and the interests it sought to advance."  *Id.* (internal citations omitted).   For an unjustified interference, "the interfering defendant must be a third party, a stranger to the business relationship."  *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (internal quotation marks and citations omitted).   "A defendant is not a 'stranger' to a business relationship if the defendant 'has any beneficial or economic interest in, or control over, that relationship.'"  *Nimbus Tech., Inc. v. SunnData Prods., Inc.*, 484 F.3d 1305, 1309 (11th Cir. 2007) (internal citations omitted).

Defendants argue that the Plaintiffs have not alleged the PJM Defendants to be strangers to the business relationships at issue.   Indeed, according to the Agreement, the PJM Defendants received "10% ownership of all of Vista current and future direct and indirect entities."  ECF No. [36-1]; ECF No. [43-1].[6]  Plaintiffs respond that the Agreement did not create a partnership and

---

[6] "[W]here a document . . . is central to the plaintiff's claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss, this Court may consider that document."  *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (citing *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500

that Piccolo and Johnson's interest in Vista constituted only payment for independent contractor services.  The Plaintiffs further assert that the PJM Defendants do not have any direct beneficial economic interest in the Plaintiffs' business relationship with existing customers.  The Court is unpersuaded by Plaintiffs' arguments.  Regardless of whether a partnership arose, the plain language of the written agreement states that the PJM Defendants obtained 10% ownership of all of Vista current and future direct and indirect entities.  *See* ECF No. [43-1].  Thus, the PJM Defendants have a direct beneficial economic interest over Vista and its customers and the PJM Defendants are not strangers to the business relationship.  *See Nimbus*, 484 F.3d at 1309.  Since the Defendants seek dismissal of the tortious interference claim as to the PJM Defendants only, Count 9 as to the PJM Defendants is dismissed.

### D.  Civil Conspiracy (Count 10)

Defendants seek dismissal of Plaintiffs' civil conspiracy claim, arguing that civil conspiracy is not an independent cause of action and that Plaintiffs fail to allege the relevant underlying claims.  In order to state a claim for civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).  Under Florida law, "a conspiracy requires the combination of two or more persons — a meeting of two independent minds intent on one purpose."  *Cedar Hills Props. Corp. v. Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991); *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. 1981).

---

F.3d 1276, 1284 (11th Cir. 2007)).  Since no party contests the contents or authenticity of the Agreement, this Court will consider it.

In the First Amended Complaint, Plaintiffs do not explicitly specify or allege the underlying causes of action supporting the civil conspiracy claim, but it appears that Plaintiffs assert four bases for civil conspiracy: (1) fraudulent misrepresentation, (2) fraudulent concealment, (3) fraud in the inducement, and (4) tortious interference.  ECF No. [33] ¶¶ 161-66.  However, because Plaintiffs fail to sufficiently state a claim for fraudulent misrepresentation, fraudulent concealment, or fraud in the inducement, and the Court has determined that the claim for tortious interference fails as a matter of law, the claim for civil conspiracy necessarily fails.  Accordingly, Count 10 is subject to dismissal.

### E.  Trademark and FDUTPA Claims as to PJM Defendants (Counts 11-13)

Defendants next seek dismissal of the trademark and FDUTPA claims against the PJM Defendants, arguing that co-owners of a mark cannot be liable for infringement.  Because the analysis of the common law trademark and FDUTPA claims is the same as the federal trademark claim, the Court considers the claims together.  *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991)); *see also Superior Consulting Servs. v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31GJK, 2018 WL 1791613 at *3 (M.D. Fla. Apr. 16, 2018) ("The analysis of the common law trademark infringement claim . . . and the [FDUTPA] claim . . . is the same as that of the federal trademark infringement claims.").

The PJM Defendants argue that because they possess a 10% ownership interest in Vista by virtue of the Agreement, they are co-owners of the trademark and therefore cannot be liable for infringement.  Plaintiffs respond that the PJM Defendants' argument is premature, no partnership between PJM Defendants and Vista was created in this case.  Moreover, even if the Agreement

created an ownership interest or partnership, the PJM Defendants did not possess an ownership interest in Vista's customer list.

The Lanham Act, codified at 15 U.S.C. §§ 1051-1127, protects trademark owners from infringement and unfair competition by prohibiting the use "of any 'word, term, name, symbol or device, . . . or any false designation of origin . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *Tana v. Dantanna's*, 611 F.3d 767, 772-73 (11th Cir. 2010) (quoting 15 U.S.C. § 1125(a)). A plaintiff must show "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997).

When exhibits contradict general or conclusory allegations, the exhibits will control. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)). In the First Amended Complaint, Plaintiffs allege that the Agreement did not create a partnership. *See* ECF No. [33] ¶ 219. Critically, however, Plaintiffs do not dispute the authenticity of the Agreement, which they have attached to their Response. The Agreement states that PJM Defendants would receive "10% ownership of all of Vista current and future direct and indirect entities." ECF No. [43-1]. Thus, regardless of whether a partnership was formed, PJM Defendants received a 10% ownership interest in Vista through the Agreement. Moreover, the Agreement does not limit the assets in which PJM Defendants possess their interest. Accordingly, Plaintiffs cannot state a claim against the co-owner of a trademark for trademark infringement. *See Tipsey McStumbles, LLC v. Griffin*, No. CV 111-053, 2011 WL 13217129, at *4 (S.D. Ga. Aug. 2, 2011) (noting that a co-owner cannot be liable to a co-owner for trademark

infringement); *accord Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1304 n.12 (11th Cir. 2007) (noting that a co-owner of a copyright cannot be liable for copyright infringement).

A "federal cause of action under the Lanham Act often mirrors a cause of action brought under FDUTPA." *Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1276 (S.D. Fla. 2017) (citing *Suntree Techs. Inc. v. Ecosense, Int'l*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("The legal standards [the Eleventh Circuit] appl[ies] to . . . [FDUTPA] claim[s] are the same as those [the Eleventh Circuit] ha[s] applied under section 43(a) of the Lanham Act.")). FDUTPA "protect[s] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

Defendants argue that because Plaintiffs' FDUTPA claim is based upon the same underlying allegations as Plaintiffs' trademark claims, the FDUTPA claim fails. The Court agrees. Because the Court finds that the PJM Defendants co-owned the marks and that the federal and common law trademark infringement and unfair competition claims each do not state a claim for relief, the Court also finds that the Plaintiffs fail to state a FDUTPA claim. Accordingly, Count 13 is dismissed as to the PJM Defendants.

### F.  *Misappropriation of Trade Secrets Claims (Counts 15 and 16)*

Defendants seek dismissal of Counts 15 and 16 asserting claims for misappropriation of trade secrets under the DTSA and FUTSA, arguing that Plaintiffs have not alleged any reasonable steps taken with respect to Vista's disclosure of confidential information to the PJM Defendants. Plaintiffs respond that whether a party has taken reasonable steps under the circumstances to preserve its trades secret is a factual inquiry that cannot be resolved on a motion to dismiss, and that in any event, password protection and restriction of employee access constitute reasonable

steps to protect information.  The parties agree that analysis of the claims is substantively identical. Therefore, the Court analyzes them together.

The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  The DTSA further defines misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances," which gives rise to a duty to maintain the secrecy or limit the use of the trade secret.  18 U.S.C. § 1839(5).  Similarly, the FUTSA provides a cause of action for the misappropriation of trade secrets.  Fla. Stat. §§ 688.001-009.  "To prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated."  *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017) (citing Fla. Stat. § 688.002; *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)).  A "trade secret" is information that "(a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (citing Fla. Stat. § 688.002(4)).

In order to state a claim for misappropriation of a trade secret, a plaintiff must allege that (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy; and

(2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).

Plaintiffs argue that Defendants misappropriated Vista's customer list, which is a trade secret and allege that they took reasonable efforts to maintain the secrecy of the information "including, but not limited to, password protection, and restriction of access to essential personnel." ECF No. [33] ¶ 203. Specifically, Plaintiffs allege that as part of the process of developing the Back Office, Plaintiffs gave the PJM Defendants temporary special access to Vista's information, including its customer lists, and that otherwise, the information was password protected and accessible only by Vista's officers. *Id.* ¶ 28. Plaintiffs further allege that they granted Defendant Johnson one-time access to view and understand the scope of data and that afterward, Plaintiffs changed the password, restricting access to only Vista's officers. *Id.* ¶ 28, n.4. Thereafter, once the protected data was uploaded into the Back Office, it was password protected and Vista allowed access to the PJM Defendants for the purpose of performing customer service only. *Id.* ¶ 31.

Defendants argue that the alleged steps were insufficient because Plaintiffs have not alleged any reasonable steps taken to restrict the PJM Defendants' access or use of the protected data (as opposed to employee access), and there is no allegation that Vista required the PJM Defendants to protect the secrecy of the information through, for example, a confidentiality agreement. Upon review, the Court determines that Plaintiffs have not sufficiently alleged that they took reasonable steps to protect the alleged trade secret information. Generally, "limiting employee access to the information and password-protecting the computer network on which the information resided [a]re positive steps in securing the alleged trade secret." *Yellowfin Yachts,*

*Inc.*, 898 F.3d at 1300.  However, those efforts may be undermined by the subsequent failure to safeguard the use of and access to the alleged trade secret.  *Id.* at 1301.  Indeed, "[d]isclosing the information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret."  *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016) (quoting *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 691 (Bankr. M.D. Fla. 2010)) (quotations omitted).  Here, Plaintiffs concede that they gave the PJM Defendants access to the alleged confidential information and proprietary trade secrets to develop the Back Office, and Plaintiffs do not allege the existence of any confidentiality agreement between the parties.  In fact, the Agreement does not contain language specifying or protecting any confidential information or proprietary trade secrets.  *See* ECF No. [43-1]. Accordingly, Plaintiffs fail to allege that they took reasonable steps to safeguard the secrecy of their data in order to state claims for misappropriation of trade secrets.  Accordingly, Counts 15 and 16 are subject to dismissal.

### G.  *Constructive Trust (Count 17)*

Defendants seek dismissal of Plaintiffs' constructive trust claim, arguing primarily that constructive trust is a remedy, rather than a standalone cause of action.  "A constructive trust is a remedial device with dual objectives — to restore property to the rightful owner and prevent unjust enrichment."  *Abreu v. Amaro*, 534 So. 2d 771, 772 (Fla. 3d DCA 1988).  For a constructive trust, there must be "(1) a promise express or implied, (2) transfer of the property and reliance thereon, (3) confidential relationship, and (4) unjust enrichment."  *Id.*  "[A] constructive trust is not a traditional cause of action; it is more accurately described as an equitable remedy . . . that must be imposed based upon an established cause of action."  *Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005).  As such, the assertion of an independent claim for "constructive trust" is

Case No. 18-cv-62737-BLOOM/Valle

improper, though Plaintiffs are free to seek a constructive trust as a remedy in this case. Accordingly, Count 17 will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Motion, **ECF No. [36]**, is **GRANTED** as follows:

1.  Count 3 is **DISMISSED WITHOUT PREJUDICE** to the extent that it is premised upon the alleged conversion of unidentified and unspecified "revenues."

2.  Counts 4, 10, 15, and 16 are **DISMISSED WITHOUT PREJUDICE**.

**3.**  Counts 6, 7, 8, and 17 are **DISMISSED WITH PREJUDICE.**

4.  Counts 9, and 11, 12, and 13 are **DISMISSED WITH PREJUDICE** as to the PJM Defendants only.

5.  Plaintiffs may file a Second Amended Complaint, **on or before April 29, 2019**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of April, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

24