IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:18-cv-62737-BB

ARMEN A. TEMURIAN, an individual; and
VISTA TECHNOLOGIES LLC, a California
limited liability company,

    Plaintiffs,

v.

PHILLIP A. PICCOLO, JR., an individual;
KEVIN DALTON JOHNSON, an individual;
PAUL MORRIS, an individual; JOSEPH
REID, an individual; TRAVELADA, LLC, a
Florida limited liability company, GEORGE
FOERST d/b/a TRAVELADA
INTERNATIONAL SOFTWARE, a Florida
fictitious entity, and K.F.I. SOFTWARE, a
Florida common law partnership,

    Defendants.

---

## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants Phillip A. Piccolo ("Piccolo"), Paul Morris ("Morris"), Joseph Reid ("Reid"), Travelada, LLC ("Travelada"), and Kevin Dalton Johnson ("Johnson") (collectively, the "Defendants")[1] hereby file this motion to dismiss plaintiffs Armen A. Temurian ("Temurian") and Vista Technologies LLC's ("Vista") (collectively, the "Plaintiffs") Second Amended Complaint [D.E. 71] for lack of subject matter jurisdiction or, alternatively, to dismiss Counts 1, 2, 3, 4, 11, 12, 13, 14, 15, 16, 18, and 19 for failure to state a claim, and state as follows:[2]

---

[1]    For purposes of this Motion, "Defendants" does not include the additional parties added as defendants in the Second Amended Complaint (George Foerst d/b/a Travelada International and K.F.I. Software). To undersigned counsel's knowledge, these defendants have not been served with the Second Amended Complaint at the time this Motion was filed.

[2]    Defendants request that their time to respond to the remaining Counts of the Second Amended Complaint be

## INTRODUCTION

In filing their Second Amended Complaint, Plaintiffs cling to the hope that the third time's a charm. Plaintiffs amended once as a matter of right following Defendants' initial motion to dismiss and amended a second time following the Court's Order on Motion to Dismiss Amended Complaint [D.E. 59]. Plaintiffs should not get a fourth bite at the apple. The Court should dismiss this case in its entirety for lack of subject matter jurisdiction or, alternatively, should dismiss the majority of Plaintiffs' recast claims as they either fail to address the deficiencies previously identified by the Court or create new deficiencies altogether. The time has come for Plaintiffs to proceed (in Florida state court where they belong) on their remaining claims and for Defendants to have an opportunity to proffer their counterclaims (rather than constantly respond to new and creative claims plucked from a rolodex of business torts).

## ARGUMENT

**I.      This Lawsuit Should be Dismissed for Lack of Subject Matter Jurisdiction**

As a threshold matter, the Court must determine whether subject matter jurisdiction is appropriate prior to addressing Defendants' 12(b)(6) arguments. See Sierra Club, Inc. v. St. Johns River Water Mgmt. Dist., No. 6:14-cv-1877-Orl-40DAB, 2015 U.S. Dist. LEXIS 151019, at *13 (M.D. Fla. Nov. 6, 2015) ("District courts must address jurisdictional objections before analyzing the sufficiency of a complaint. Accordingly, the Court will evaluate the Defendants' respective

---

tolled until 14 days following disposition of this Motion, as doing so will avoid confusion and duplicative pleadings. See Talbot v. Sentinel Ins. Co., Ltd., No. 2:11-cv-01766-KJD-CWH, 2012 U.S. Dist. LEXIS 43340, (D. Nev. Mar. 29, 2012) (collecting cases and agreeing with the "majority of courts that have held that a pending motion to dismiss, although it may only address some of the claims alleged, tolls the time to respond to all claims under" Rule 12); ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc., 2011 U.S. Dist. LEXIS 145504 (D. Ariz. Dec. 16, 2011) ("[T]he majority of courts have expressly held that even though a pending motion to dismiss may only address some of the claims alleged, the motion to dismiss tolls the time to respond to all claims.").

12(b)(1) challenges before considering the Defendants' 12(b)(6) arguments.") (internal citation omitted).  Here, Plaintiffs assert that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) "because the amount in controversy is over $75,000.00, exclusive of interests and costs, and is between citizens of different states."[3]  Plaintiffs are wrong.

"When determining citizenship of the parties for diversity jurisdiction purposes, a limited liability company (LLC) is a citizen of every state that any member is a citizen of."  <u>Purchasing Power, LLC v. Bluestem Brands, Inc.</u>, 851 F.3d 1218, 1220 (11th Cir. 2017); see also <u>Crook-Petite-El v. Bumble Bee Seafoods L.L.C.</u>, No. 11–16076, 012 WL 6685563, at *1 (11th Cir. Dec. 26, 2012) ("[A] limited liability company, like a partnership, is a citizen of any state of which a member of the company is a citizen."); <u>Atlantic Hospitality of Fla. LLC v. General Star Indem. Co.</u>, No. 09–23661, 2010 WL 2639637, at *1 (S.D. Fla. June 29, 2010) ("The citizenship of a limited liability company is determined, for diversity purposes, by the citizenship of all the members composing the entity.").  The Second Amended Complaint asserts that Vista's members "are all citizens of California,"[4] but that assertion is untrue.  As recognized by the Court in its Order on Motion to Dismiss Amended Complaint [D.E. 59], the January 26, 2018 written contract (the "<u>Written Agreement</u>") between the parties granted the PJM Defendants a 10% ownership interest in Vista:

> The Plaintiffs further assert that the PJM Defendants do not have any direct beneficial economic interest in the Plaintiffs' business relationship with existing customers. The Court is unpersuaded by Plaintiffs' arguments. Regardless of whether a partnership arose, the plain language of the written agreement states that the PJM Defendants obtained 10% ownership of all of Vista current and

---

[3]   See Second Amended Complaint, ¶16.

[4]   Id. at ¶ 8.

future direct and indirect entities.[5]

While Plaintiffs shied away from the Written Agreement in their prior pleadings, they now fully embrace it in the Second Amended Complaint. Indeed, Plaintiffs assert multiple claims in the Second Amended Complaint that arise directly from the Written Agreement: Count 3 (for breach of the Written Agreement), Count 4 (for breach of the duty of good faith and fair dealing with respect to the Written Agreement), Count 17 (breach of fiduciary duty),[6] Count 18 (aiding and abetting breach of fiduciary duty), and Count 20 (usurpation of partnership opportunities).

Vista is a citizen of any state of which a member of the company is a citizen. The PJM Defendants are members of Vista (by virtue of the Written Agreement) and are each citizens of the State of Florida. Vista is deemed to be a citizen of Florida and therefore complete diversity of citizenship does not exist. For this reason alone, the entirety of the Second Amended Complaint must be dismissed. See, e.g. Tangshan Ganglu Iron & Steel Co. v. Mapuche, LLC, No. 14-61093-CIV, 2014 U.S. Dist. LEXIS 69078, at *4 (S.D. Fla. May 20, 2014) (granting motion to dismiss for lack of subject matter jurisdiction where Chinese member of Florida limited liability company sued the other member and the limited liability company).

Further, although not asserted as a jurisdictional basis in the Second Amended Complaint, Plaintiffs do assert certain claims for which federal question jurisdiction arguably exists under 28 U.S.C. § 1331. These claims include Count 12 (trademark infringement), Count 14 (trafficking of passwords), and Count 15 (Defend Trade Secrets Act). As discussed herein, however, each of these claims is due to be dismissed (as they were with respect to the First Amended Complaint),

---

[5] See D.E. 59, at p. 17.

[6] Count 17 directly states: "Vista alleges the January 26 Service Contract created a partnership between Vista, on the one hand, and K.F.I. and the PJM Defendants, on the other." See Second Amended Complaint, ¶ 262. The same allegation is repeated in Count 18 (¶ 267).

leaving only seventeen (17) state law claims remaining (to which diversity jurisdiction would not exist). These claims necessarily predominate over their federal counterparts and therefore dismissal (with a direction that Plaintiffs re-file in the 17th Judicial Circuit in and for Broward County, Florida) is appropriate under 28 U.S.C. § 1367. See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging "district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial").

Even if the entirety of the federal claims is not dismissed, the Court should still exercise its discretion under § 1367(c)(2) to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. See Altex United States Corp. v. Quintana, No. 18-cv-20880-GAYLES/OTAZO-REYES, 2018 U.S. Dist. LEXIS 207824, at *9 (S.D. Fla. Dec. 10, 2018) ("The Court finds that the array of state law claims against Defendant, including claims under Florida law for money lent, breach of contract, violation of the Florida Uniform Trade Secrets Act, conversion, and breach of fiduciary duty, substantially predominate over the single CFAA claim against Defendant. Thus, the Court declines to exercise supplemental jurisdiction over the state law claims in Counts II through VI."). At this point, it is unclear whether any state law claim exists that Plaintiffs have not already injected into the Second Amended Complaint. The seventeen (17) state law claims asserted by Plaintiffs necessarily predominate over Plaintiffs' federal claims – especially when two of those claims have already been dismissed once before and the third (as explained herein) is little more than a desperate (and misguided) attempt to maintain federal jurisdiction.

## II.     Count 1 (Breach of Oral Contract) Should be Dismissed

Count 1 of the Second Amended Complaint purports to assert a claim for breach of oral contract against the PJM Defendants. According to the Second Amended Complaint, the PJM Defendants breached the ever-evolving oral agreement between the parties (now formed sometime

in mid-December 2017) by failing to provide a custom-built Back Office Software and relinquish control of the Back Office Software once constructed.[7]  This claim should be dismissed, however, because the parties' subsequent agreement – the Written Agreement – contains an integration/merger clause that supersedes prior oral agreements such as the one alleged here.  See Rodriguez v. Tombrink Enterprises, Inc., 870 So. 2d 117, 119 (Fla. 2d DCA 2003) (affirming entry of summary judgment on breach of oral contract claim where subsequent written contract contained an integration clause); Aly Handbags, Inc. v. Rosenfeld, 334 So. 2d 124, 126 (Fla. 3d DCA 1976) ("The well established rule of law is that a contract may be discharged or extinguished by merger into a later contract entered into between the parties in respect to the same subject which replaces the original contract.").  See also Johnson Enters. of Jacksonville v. Fpl Grp., 162 F.3d 1290, 1309 (11th Cir. 1998) (noting that prior or contemporaneous oral agreements cannot vary or contradict the unambiguous language of a valid written contract with a merger clause).  Although admittedly not an exemplar of sophisticated legal writing, the Written Agreement specifically states:

> This version once signed endorses and simplifies all other verbal and written agreements to date.

Vista cannot allege breach of the mid-December 2017 oral contract when the January 26, 2018 Written Agreement contains a merger/integration clause that specifically replaces/supersedes any prior agreements.  Count 1 should therefore be dismissed.

**III.    Count 2 (Promissory Estoppel) Should be Dismissed**

Count 2 of the Second Amended Complaint purports to assert a claim for promissory estoppel against the PJM Defendants.  Count 2 should be dismissed for the same reason as Count

---

[7]    See Second Amended Complaint, ¶ 124.

1 – the existence of the merger/integration clause in the parties' subsequent Written Agreement. See Advanced Marketing Systems Corp. v. ZK Yacht Sales, 830 So. 2d 924, 928 (Fla. 4th DCA 2002) (holding that claim for promissory estoppel is not available where a written contract exists between the parties covering the same subject matter); Kamil Gowni & Shenody, Inc. v. BP Corp. North America, Inc., No. 6:01CV1405-ORL-28KRS, 2003 U.S. Dist. LEXIS 26843, 2003 WL 24051561 ** 7-8 (M.D. Fla. May 9, 2003) (reliance on oral representations not reasonable where subsequent and contemporaneous written agreements contradicted representations, and contained merger clauses).

### IV.     Count 3 (Breach of January 26 'Service Contract') Should be Dismissed

Count 3 of the Second Amended Complaint purports to assert a claim for breach of the Written Agreement.[8]  According to the Second Amended Complaint, Piccolo and Johnson breached obligations therein to bring their "ALL IN packages" and "ALL-IN commitment" to the parties' business venture.  This allegation, however, is plainly insufficient to support a claim for breach of contract under Florida law.

"A cause of action for breach of contract has three elements: (1) a valid contract, (2) a material breach, and (3) damages." Havens v. Coast Fla., P.A., 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013).  Here, Vista has failed to allege sufficient facts with respect to a "material breach" and therefore Count 3 should be dismissed.  This is because Vista selectively quotes the "all-in" language of the Written Agreement out of context – it is not a contractual promise but rather prefatory/preliminary language akin to a "whereas" clause/recital in a somewhat more polished

---

[8]     A true and correct copy of the Written Agreement is attached hereto as Exhibit "A."  Although not attached to the Complaint, the Court may consider the Written Agreement in evaluating this motion to dismiss because the Written Agreement is (1) central to the Complaint (given that Vista is attempting to assert a claim for breach thereof) and (2) no party questions the Agreement's authenticity.  See Madura v. Bank of Am., N.A., No. 17-15751, 2019 U.S. App. LEXIS 10202, at *2-3 (11th Cir. Apr. 8, 2019).

contractual agreement.  Indeed, the specific paragraph at issue states:

> The bottom line is that all involved are bringing there ALL IN packages to Vista to grow it to a BILLION DOLLAR and beyond Entity. To put all of the benefits that K.F.I. is receiving for their estimated at 10 million dollars of assets in perspective is a total less than $290,000 in Cryptocurrency, 200 Major Mining machines and 10% ownership of all of Vista current and future direct and indirect entities. This also does not take into account the value of gaining the ALL-IN commitment of K.F.l.'s management and power team which we deem PRICELESS. Here are the simple agreed to terms;

This "all-in" language is akin to a prefatory clause that is simply not actionable on a claim for breach of contract. See, e.g. Fla. Power & Light Co. v. Nuclear Energy Inst., Inc., No. 18-cv-80118, 2018 U.S. Dist. LEXIS 165493, at *12 (S.D. Fla. Sep. 25, 2018) ("A 'whereas clause,' however, 'is not an essential part of the operating portions of the contract.'") (quoting Black's Law Dictionary 1101 (West abridged 6th ed. 1991)); Allen v. Advanced Telecomm. Network, Inc. (In re Advanced Telecomm. Network, Inc.), No. 6:10-cv-381-Orl-28, 2010 U.S. Dist. LEXIS 110378, at *11 (M.D. Fla. Aug. 31, 2010) ("The recitals to a contract generally are not part of the agreement."); Johnson v. Johnson, 725 So. 2d 1209, 1212-13 (Fla. 3d DCA 1999) (collecting cases); Multimedia Games, Inc. v. Network Gaming Int'l Corp., No. 98-CV-67-H(M), 1999 U.S. Dist. LEXIS 23369, at *15 (N.D. Okla. Sep. 3, 1999)  ("[T]he Court concludes that the 'whereas' clause of LDA2 does not constitute a contractual commitment because as a matter of law the language contained in a 'whereas' clause cannot support a claim for breach of contract."); Sengillo v. Valeo Elec. Sys., 536 F. Supp. 2d 310, 312 (W.D.N.Y. 2008) ("It is well settled that, absent some ambiguity in the underlying contract, a recital clause does not create enforceable obligations on the part of the parties and therefore cannot serve as the basis for a breach of contract claim."). Count 3 should therefore be dismissed.

**V.      Count 4 (Breach of the Duty of Good Faith and Fair Dealing) Should be Dismissed**

Count 4 of the Second Amended Complaint purports to assert a claim for breach of the duty of good faith and fair dealing against Piccolo and Johnson. Although somewhat unclear, Count 4 appears to be predicated on both the supposed oral agreement between the parties and the "all-in" clause of the Written Agreement. This claim, however, is insufficient under Florida law.

"A stand-alone or independent claim for breach of the implied covenant of good faith and fair dealing (present Count VI) is disfavored in the case law." Tampa D Fluor Enters. v. Duke Energy Fla., LLC, No. 8:19-cv-224-T-02AAS, 2019 U.S. Dist. LEXIS 64557, at *3 (M.D. Fla. Apr. 16, 2019). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action but attaches to the performance of a specific contractual obligation." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005). "The implied duty of good faith must therefore 'relate to the performance of an express term of the contract . . . [and] cannot be used to vary the terms of an express contract.'" Interim Healthcare, Inc. v. Health Care@home, LLC, No. 17-cv-61378-BLOOM/Valle, 2019 U.S. Dist. LEXIS 61996, at *31 (S.D. Fla. Mar. 19, 2019) (quoting Burger King Corp. v. Weaver, 169 F.3d 1310, 1316 (11th Cir. 1999). "Further, the covenant cannot 'add an obligation to the contract which was not negotiated by the parties and not in the contract.'" Interim Healthcare, Inc., 2019 U.S. Dist. LEXIS 61996, at *31 (quoting Hosp. Corp. of Am., 710 So. 2d at 575). Here, Vista has done nothing more than repurpose its 'breach of contract' allegations (which themselves are deficient) as a breach of an implied duty. Vista has not identified any specific contract term (oral or written) to which Piccolo/Johnson did not perform in good faith, and therefore this claim – which is highly disfavored under Florida law – should be dismissed.

## VI. The Court Should Require a More Definite Statement with Respect to Count 10 (Unjust Enrichment)

Count 10 of the Second Amended Complaint purports to assert a claim for unjust enrichment. It is unclear, however, precisely which defendant(s) such claim is asserted against. For example, Count 10 appears to be asserted "AGAINST JOHNSON" as per its heading. While the bulk of the paragraphs therein appear to be Johnson specific, several of the other paragraphs refer to the "PJM Defendants" being unjustly enriched as well.[9] Defendants should not be left to guess whether this claim is asserted against Johnson only (as its title would suggest) or whether Vista contends that Piccolo/Morris must also respond thereto. This is material not only in preparing for summary judgment trial, but also with respect to any forthcoming Rule 11 motions by one or more of the Defendants given the 'loose' nature of Plaintiffs' pleading to date. The Court should require a more definite statement as to who precisely Count 10 is asserted against.

## VII. Count 11 (Tortious Interference) Should be Dismissed

Count 11 of the Second Amended Complaint purports to assert a claim for tortious interference against Travelada and Travelada International. Count 11 is based entirely on the allegation that Travelada and Travelada International used Vista's customer list to send out mass emails to Vista's clients.[10] This allegation, however, is belied/contradicted by Plaintiffs' earlier factual assertions that one, more than one, or all of the 'PJMTTI Defendants' (five different defendants) used Vista's customer list to send the aforementioned emails.[11] Presumably, Vista is not suggesting that five different defendants simultaneously pressed the "send" button such that each is deemed to be the sender of the emails at issue. One person sent the emails (whose identity

---

[9]  See, e.g. Second Amended Complaint, ¶¶ 189; 204; 205; 206.

[10] Id. at ¶ 210.

[11] Id. at ¶¶ 95 – 109.

has already been disclosed to Plaintiffs in discovery), and Plaintiffs cannot avoid this fact through a shotgun-style pleading that fails to distinguish between five defendants.  As the Court knows, this 'lumping' together of defendants is lazy, improper, and cause for dismissal.  See, e.g. Johnson v. Niermann, No. 18-cv-62400-BLOOM/Valle, 2019 U.S. Dist. LEXIS 53477, at *5 (S.D. Fla. Mar. 29, 2019) ("[T]the SAC is a shotgun pleading because its counts impermissibly reference acts done by the "Defendants" collectively, which improperly lumps them together. This is especially problematic considering that there are nine different Defendants named this lawsuit, which include individual Defendants and several Defendants that are departmental agencies."); Bledsoe v. Palm Beach Cty. Bd. of Cty. Comm'rs, No. 18-cv-81163-BLOOM/Reinhart, 2019 U.S. Dist. LEXIS 55138, at *6 (S.D. Fla. Apr. 1, 2019) ("[L]umping Defendants together as "the County" results in a failure to identify which factual allegations are relevant to which defendant(s) under which theory. Thus, Plaintiff's Complaint is an improper shotgun pleading.").

**VIII.   Count 12 (Trademark Infringement and Unfair Competition Under the Lanham Act) and Count 13 (Common Law Trademark Infringement and Unfair Competition) Should be Dismissed**

Counts 12 and 13 of the Second Amended Complaint purport to assert claims for trademark infringement/unfair competition against Travelada and Travelada International.  These claims fail for the same reason as Count 11 – they are based entirely on the sending of emails by the 'PJMTTI Defendants' and fails to identify which (if any) of the identified emails were supposedly sent by either Travelada or Travelada International.  As such, Counts 12 and 13 constitute shotgun pleadings that must be dismissed.

**IX.   Count 14 (Unauthorized Trafficking of Passwords) Should be Dismissed**

Count 14 of the Second Amended Complaint purports to assert a claim for violation of the Computer Fraud and Abuse Act (the "CFAA") against Piccolo, Johnson, Morris, Travelada, and

Travelada International. Vista alleges a violation of 18 U.S.C. § 1030(a)(6)(A) which pertains to trafficking of passwords through which a computer could be accessed without authorization. According to the Second Amended Complaint, the 'PJMTTI Defendants' violated this provision by causing the Back Office Software "to transmit the API information to Vista's Alfacoins account" which in turn caused "a significant number of bitcoin and other cryptocurrencies to be transferred to the PJMTTI Defendants."[12] Plainly stated, Vista's efforts here amount to a square peg in a round hole or, more specifically, a disjointed mess.

To bring a claim under 18 U.S.C. § 1030(a)(6)(A), Vista must adequately allege that the 'PJMTTI Defendants' knowingly and with the intent to defraud, trafficked a password or similar information through which a computer could be accessed without authorization. The CFAA defines "traffic" as to "transfer, or otherwise dispose of, to another, or obtain control of with the intent to transfer of dispose of." 18 U.S.C. § 1029(e)(5). Here, Count 14 fails for at least two reasons. First, Count 14 is a textbook example of a shotgun pleading that 'lumps' together multiple defendants (in this case, Piccolo, Johnson, Morris, Travelada, and Travelada International) and fails to explain what conduct – if any – is attributable to each. Rather than allege *any* facts describing how each of the 'PJMTTI Defendants' trafficked in passwords, Vista took the lazy approach by grouping five defendants together as if they are a uniform hive. As explained above, such practice is improper and cause for dismissal.

Second – and more importantly – is the fact that the Second Amended Complaint does not allege "trafficking" or the ability to access a computer "without authorization." The Second Amended Complaint does not allege that any of the 'PJMTTI Defendants' (let alone the collective

---

[12] Id. at ¶ 240.

group) transferred or otherwise disposed of Vista's login information, passwords, or other similar information. At most, the Second Amended Complaint alleges that one or more of the 'PJMTTI Defendants' used an application programming interface for his/her own benefit (to allegedly misappropriate cryptocurrency) – not that he/she transferred that interface or passwords to some third party. This deficiency is fatal to Vista's claim. See State Analysis, Inc. v. Am. Fin. Servs. Assoc., 621 F. Supp. 2d 309, 317 (E.D. Va. 2009) ("The Complaint does not allege that KSE transferred, or otherwise disposed of, AFSA's passwords; rather, it alleges that KSE received them from AFSA and used them without authorization. Such conduct does not constitute 'trafficking' under § 1029. Therefore, KSE's motion to dismiss the § 1030(a)(6) trafficking claim will be granted."). Further, the Second Amended Complaint does not allege that the API (the asserted password equivalent) can be used to access a computer without authorization. Indeed, ¶¶ 236 – 237 of the Second Amended Complaint specifically alleges that the Back Office Software "was designed" to communicate with the subject Alfacoins account and to send cryptocurrency to/from such account. By definition, the API cannot be used to access an account "without authorization" if accessing that account is the specific task that the API was designed to do.

**X.    Count 15 (Misappropriation of Trade Secrets Under the Defend Trade Secrets Act) and Count 16 (Misappropriation of Trade Secrets Under Florida's Uniform Trade Secrets Act) Should be Dismissed**

Counts 15 and 16 once again purport to assert claims for misappropriation of trade secrets under the Defend Trade Secrets Act (the "DTSA") and Florida's Uniform Trade Secrets Act ("the FUTSA"). Notably, the Court previously dismissed these claims because "Plaintiffs have not sufficiently alleged that they took reasonable steps to protect the alleged trade secret information."[13] Specifically, the Court found:

---

[13]    See Order on Motion to Dismiss [D.E. 59], at pp. 20 – 23.

> Here, Plaintiffs concede that they gave the PJM Defendants access to the alleged confidential information and proprietary trade secrets to develop the Back Office, and Plaintiffs do not allege the existence of any confidentiality agreement between the parties. In fact, the Agreement does not contain language specifying or protecting any confidential information or proprietary trade secrets. See ECF No. [43-1]. Accordingly, Plaintiffs fail to allege that they took reasonable steps to safeguard the secrecy of their data in order to state claims for misappropriation of trade secrets. Accordingly, Counts 15 and 16 are subject to dismissal.[14]

Plaintiffs have not cured this deficiency in the Second Amended Complaint. They do not allege the existence of a newfound confidentiality agreement or an enforceable 'pinky swear' to protect the confidentiality of Vista's data. Rather, the Second Amended Complaint alleges the same temporary/limited access to the subject data without any formal instruction/limitation for the use thereof. That the Second Amended Complaint now includes language such as "for the singular purpose"[15] or "singular and limited purpose"[16] does not magically imbue the disclosure with the confidentiality protections that were found lacking in the First Amended Complaint. Plaintiffs have better described why the subject data is valuable, but they failed to identify a single reasonable measure they took to restrict the PJMTTI Defendants' use of such data.

As with Vista's claim for violation of the CFAA, this claim is also subject to dismissal as a shotgun pleading in that it lumps five defendants together and fails to identify the 'misappropriation' attributable to each. For example, Travelada International was registered as a Florida fictitious name on May 14, 2018 – months after the alleged misappropriation took place.[17]

---

[14]   Id. at p. 23.

[15]   See Second Amended Complaint, ¶ 86.

[16]   Id. at ¶¶ 92; 249, 258.

[17]   See Fictitious Name Detail, a true and correct copy of which is attached hereto as Exhibit "B" (also available at Florida's Division of Corporations website [www.sunbiz.org]). "The Eleventh Circuit has determined that a court may take notice of public records when ruling on a motion to dismiss." Phillips v. City of W. Palm Beach, No. 18-cv-80172-BLOOM/Bran, 2018 U.S. Dist. LEXIS 124818, at *12 (S.D. Fla. July 25, 2018) (citing cases).

Travelada International is a fictitious name registration of George Foerst and there are no allegations anywhere in the Second Amended Complaint how either supposedly misappropriated Vista's trade secrets.  The Court should not allow this type of lazy pleading.

## XI.  Count 18 (Aiding and Abetting Breach of Fiduciary Duty) Should be Dismissed

Count 18 of the Second Amended Complaint purports to assert a claim for aiding and abetting breach of fiduciary duty against Reid.  According to the Second Amended Complaint, Reid 'substantially assisted' the PJM Defendants in their alleged breaches of fiduciary duty by "willfully and wantonly telling Temurian multiple times that Piccolo and Johnson were trustworthy, that Piccolo and Johnson were legitimate software developers, and that they were a legitimate software development team…."[18]  These are the *same* allegations that the Court previously found to be statements of opinion and therefore insufficient to support a claim of fraud.[19]  Vista cannot simply repackage a failed fraud claim and allege that the same non-actionable conduct somehow constitutes 'substantial assistance' on an aiding and abetting claim.[20]

## XII.  Count 19 (Civil Conspiracy) Should be Dismissed

The Court previously dismissed Plaintiffs' civil conspiracy claim as each of the underlying tort claims on which it appeared to be based (as Plaintiffs did not specifically identify the claims) were likewise dismissed.  Plaintiffs have now reasserted the claim (still without identifying the claims on which it is based) with a catchall 'all the Defendants conspired to do everything' allegation in an effort to escape yet another dismissal.  In so doing, however, Plaintiffs have not fixed the deficiency but rather created another multitude of deficiencies.  Once again, it is entirely

---

[18]  See Complaint, ¶ 271.

[19]  See D.E. 59, pp. 11 – 12.

[20]  Compare Second Amended Complaint, ¶¶ 271 – 273 to First Amended Complaint, ¶¶ 121 – 123.

unclear what underlying claims the civil conspiracy claim is predicated upon. As stated, Reid and the PJMTTI Defendants conspired to commit every scheme and tortious act alleged in the 283-paragraph complaint. Defendants should not be left to guess which underlying tort the civil conspiracy claim is based upon – this is Plaintiffs' third attempt to properly allege a civil conspiracy claim and it should not be asking too much for Plaintiffs to name the claim accordingly (e.g. conspiracy to commit fraud, conspiracy to commit conversion, etc.).

Further, the conspiracy claim is entirely devoid of any underlying factual allegation supporting the elements of the claim. While the Second Amended Complaint alleges that "Reid and the PJMTTI Defendants conspired and made an agreement amongst themselves…,"[21] the details of such agreement and the overt acts of the purported members of the conspiracy are sorely lacking. Threadbare/conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss. Quality Auto Painting Ctr. of Roselle v. State Farm Indem. Co., 917 F.3d 1249, 1262 (11th Cir. 2019) ("Conclusory allegations of agreement or conspiracy are insufficient."). As recently stated by Judge Marra and applicable here:

> With respect to cross-claim four, KK-PB has alleged that R. Matthews and M. Matthews conspired to take monies used to pay the note to purchase a yacht and pay their personal expenses which caused damage to KK-PB, by virtue of the note going into default. (CCC ¶¶ 43-47.) These allegations are conclusory and insufficient. A claim for civil conspiracy must allege the scope of the conspiracy, its participants, and when the agreement was entered into. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy. Simply alleging that there was an agreement to take money for personal expenses is insufficient to allege a conspiracy.

Lan Li v. Walsh, No. 16-81871-CIV-MARRA, 2019 U.S. Dist. LEXIS 14836, at *17-18 (S.D. Fla. Jan. 29, 2019) (internal citations and quotations omitted). Defendants should not be forced to

---

[21] See Second Amended Complaint, ¶ 276.

decipher their alleged participation in some nebulous conspiracy in which Plaintiffs cannot be bothered to provide the minimum 'who,' 'how,' and 'when' details necessary to support such claim. For example, Reid is supposedly a member of this conspiracy, yet is alleged to have done nothing other than make an introduction and give an opinion that the PJM Defendants were trustworthy/legitimate. Travelada International is supposedly a member of this conspiracy, yet it was not even formed/registered as a fictitious entity until May 14, 2018 – several months after the 'conspiratorial' conduct alleged in the Second Amended Complaint.

Finally, the Second Amended Complaint alleges that Piccolo, Johnson, and Murphy are the members of both Travelada and Travelada International.[22] As such, absent plausible allegations of Reid's participation in the conspiracy, the claim fails due to the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000). This is why Plaintiffs define the conspiracy as between "Reid and the PJMTTI Defendants"[23] rather than creating yet another acronym and alleging that the "RPJMTTI Defendants conspired amongst themselves" – simply put, Plaintiffs need Reid's participation to support a conspiracy claim and to avoid the intracorporate conspiracy doctrine. Given that Plaintiffs' claim is built on a veritable house of cards, they must allege plausible facts supporting each defendant's (including

---

[22] See Second Amended Complaint, ¶¶ 13 – 14.

[23] Id. at ¶ 276.

Reid) participation in the supposed conspiracy. They have not, and therefore the claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order:

(a) dismissing this lawsuit for lack of subject matter jurisdiction or declining to exercise supplemental jurisdiction over Plaintiffs' state law claims that predominate this dispute;

(b) dismissing Counts 1, 2, 3, 4, 11, 12, 13, 14, 15, 16, 18, and 19; and

(c) for such further relief as the Court deems proper.

Dated: May 12, 2019.

DESOUZA LAW, P.A.
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (954) 603-1340
DDesouza@desouzalaw.com

By: /s/ Daniel DeSouza, Esq.
Daniel DeSouza, Esq.
Florida Bar No.: 19291

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza
Daniel DeSouza