UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CV-62737-SMITH/VALLE

ARMEN A. TEMURIAN, *et al*,

    Plaintiffs,

v.

PHILLIP A. PICCOLO, JR., *et al*,

    Defendants.

    _____/

## ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Second Amended Complaint ("Motion to Dismiss") (ECF No. 74). Defendants seek dismissal of Plaintiffs' Second Amended Complaint (ECF No. 71) for lack of subject matter jurisdiction, or, alternatively, dismissal of Counts 1, 2, 3, 4, 11, 12, 13, 14, 15, 16, 18, and 19 of the Second Amended Complaint for failure to state a claim. The Court has carefully reviewed the Motion to Dismiss, Plaintiffs' Response (ECF No. 96), Defendants' Reply (ECF No. 99), the applicable law, and the record as a whole.

**I.    BACKGROUND**

The factual background of this case has been set forth previously in the Court's Order on Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 59), and the factual allegations of the Second Amended Complaint are substantially similar to those of the First. Briefly, this case arises as a result of a breakdown in the relationship between Plaintiffs, Armen A. Temurian ("Temurian") and Vista Technologies LLC ("Vista") (together, "Plaintiffs") and Defendants, Phillip A. Piccolo, Jr. ("Piccolo"), Kevin Dalton Johnson ("Johnson"), and Paul

Morris ("Morris") (collectively, the "PJM Defendants"), based on Defendant Joseph Reid's ("Reid") recommendation that Plaintiffs hire the PJM Defendants to develop a back office software system and interface for Vista ("Back Office"). Plaintiffs allege that, among other things, Defendants misappropriated Vista's trade secrets, stole Vista's assets, fraudulently used Vista's customer lists, trafficked passwords, and misled customers to use Defendant Travelada, LLC ("Travelada"), an inactive limited liability company whose only members were the PJM Defendants. The Second Amended Complaint adds two additional Defendants: (1) George Foerst, doing business as Travelada International ("Travelada International"); and (2) K.F.I. Software ("K.F.I"), a Florida partnership consisting of Johnson and Piccolo.

Vista is a technology company that sells a hardware product called the Vista Mini Miner ("Mini Miner") (Second Amended Complaint ("SAC") ¶ 24). As Vista was preparing for the release of its Mini Miner product, it began searching for a developer to create a custom-built administrative software suite to manage its sales and shipping, handle its records, and give Vista and its customers a platform to monitor Mini Miner usage, which it calls the Back Office (*id.* ¶ 26). The Back Office would store confidential and proprietary electronic data necessary to access the digital wallets that contain Vista and its customers' funds (*id.* ¶ 27). In November 2017, Temurian met Reid, who introduced him to Piccolo and Johnson and recommended that he hire them to build Vista an administrative software suite (*id.* ¶ 28). Plaintiffs allege that, in recommending Piccolo and Johnson, Reid failed to inform Plaintiffs of prior allegations of fraudulent behavior made against Piccolo, and purposefully misled Plaintiffs about Piccolo's and Johnson's qualifications so that they could commit a series of fraudulent schemes upon Plaintiffs (*id.* ¶ 30).

On or about December 5, 2017, Temurian, on behalf of Vista, met in Florida with Piccolo and Johnson, along with Morris (*id.* ¶¶ 33-34). Temurian entered into an oral agreement with the PJM Defendants, which included, in pertinent part, that the PJM Defendants would customize and deliver the Back Office by February 2018; Vista would immediately acquire ownership of the Back Office; Vista would acquire other companies, including Travelada; and the PJM Defendants would relinquish control of the Back Office to Vista upon its completion (*id.* ¶ 34). On January 26, 2018, Plaintiffs executed a written contract with Piccolo and Johnson, doing business as K.F.I., in return for assets and a 10% ownership interest in all of Vista's current and future direct and indirect entities (*id.* ¶¶ 39-42; ECF No. 43-1 (the "Agreement")).

The parties' relationship quickly soured. Throughout the course of their business dealings, Plaintiffs allege that Defendants committed a series of fraudulent acts and schemes, including: (1) creating false customer profiles using access to the Back Office (*id.* ¶ 46); (2) perpetrating a scheme to convert Vista's cryptocurrency (*id.* ¶¶ 47-59); (3) fraudulently ordering and shipping Mini Miners (*id.* ¶¶ 60-71); (4) laundering fraudulent gains procured through various Vista accounts (*id.* ¶¶ 72-75); (5) disabling Vista's access to the Back Office (*id.* ¶¶ 76-85); (6) using Vista's customer list to send out emails to customers whilst impersonating Vista (*id.* ¶¶ 86-115); and (7) extorting Vista by offering to lease the Back Office back to Plaintiffs for a fee or threatening to shut off the software and delete Plaintiffs' data unless Defendants were paid large sums of money (*id.* ¶¶ 116-120).

Plaintiffs filed their original Complaint (ECF No. 1) in this Court on November 9, 2018. Plaintiffs filed their First Amended Complaint (ECF No. 33) as a matter of course on January 7, 2019. On April 22, 2019, the Court entered an Order (ECF No. 59) granting Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 36), and permitting Plaintiffs to file a Second

Amended Complaint. The operative Second Amended Complaint was filed on May 3, 2019 (ECF No. 71), and pleads a total of twenty counts against Defendants, including breach of oral contract against the PJM Defendants (Count 1); promissory estoppel against the PJM Defendants (Count 2); breach of written contract against K.F.I. Software, Piccolo, and Johnson (Count 3); breach of duty of good faith and fair dealing against Piccolo and Johnson (Count 4); conversion counts against the PJM Defendants, Travelada, and Travelada International (Count 5), Johnson (Counts 6, 8), and the PJM Defendants (Count 9); civil theft against Johnson (Count 7); unjust enrichment against Johnson (Count 10); tortious interference against Travelada and Travelada International (Count 11); trademark infringement and unfair competition under the Lanham Act and common law against Travelada and Travelada International (Counts 12-13); unauthorized trafficking of password information under the Computer Fraud and Abuse Act ("CFAA") (Count 14); misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and Florida's Uniform Trade Secrets Act ("FUTSA") against the PJM Defendants, Travelada, and Travelada International (Counts 15-16); breach of fiduciary duty against K.F.I. and the PJM Defendants (Count 17); aiding and abetting a breach of fiduciary duty against Reid (Count 18); civil conspiracy against the PJM Defendants, Reid, Travelada, and Travelada International (Count 19); and usurpation of partnership opportunities and misuse of partnership assets against K.F.I. and the PJM Defendants (Count 20).

In the present Motion to Dismiss, Defendants request dismissal of the entire Second Amended Complaint for lack of subject matter jurisdiction. Alternatively, Defendants seek dismissal of Counts 1, 2, 3, 4, 11, 12, 13, 14, 15, 16, 18, and 19.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

#### 1. Legal Standard

Federal courts have limited subject matter jurisdiction, and the party invoking the court's jurisdiction bears the burden of proving it exists. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). A district court must have at least one of three types of subject matter jurisdiction: "(1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing Lawrence, 919 F.2d at 1529).

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh

facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

## 2. Diversity Jurisdiction

Defendants mount a factual attack on the Amended Complaint and argue that the Court lacks subject matter jurisdiction over this case. Plaintiffs have asserted that diversity jurisdiction exists under 28 U.S.C. § 1332(a) because the amount in controversy is over $75,000 and there is complete diversity between the parties. Defendants claim that complete diversity does not exist because Plaintiff Vista shares the same citizenship (Florida) as the PJM Defendants. Defendants argue that Vista, a limited liability corporation, is a citizen of any state of which a member of the company is a citizen for diversity purposes. Because the January 26, 2018 written agreement ("Agreement") granted the PJM Defendants a 10% ownership interest in Vista, Defendants maintain that Vista is a Florida citizen by virtue of the PJM Defendants' Florida citizenship, thereby destroying complete diversity.

"When determining citizenship of the parties for diversity jurisdiction purposes, a limited liability company (LLC) is a citizen of every state that any member is a citizen of." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017); *see also Crook-Petite-El v. Bumble Bee Seafoods L.L.C.*, No. 11–16076, 2012 WL 6685563, at *1 (11th Cir. Dec. 26, 2012) ("[A] limited liability company, like a partnership, is a citizen of any state of which a member of the company is a citizen."); *Atlantic Hospitality of Fla. LLC v. General Star Indem. Co.*, No. 09–23661, 2010 WL 2639637, at *1 (S.D. Fla. June 29, 2010) ("The citizenship of a limited liability company is determined, for diversity purposes, by the citizenship of all the members composing the entity.").

The top of the Agreement is entitled "The Vista and KFI Agreement and Partnership," and is dated January 26, 2018 (ECF No. 74-1). The body of the Agreement states as follows:

> To put all of the benefits that K.F.I. is receiving for their estimated at 10 million dollars of assets in perspective is a total less than $290,000 in Cryptocurrency, 200 Major Mining machines and 10% ownership of all of Vista current and future direct and indirect entities.
>
> (. . .)
>
> Paul Morris as requested by Armen has also been awarded 10% of our 10% which is actually 1% of all Vista assets.

(*id.*). Thus, the plain language of the Agreement states that Defendant K.F.I. (a partnership consisting of Johnson and Piccolo) and Defendant Morris—each citizens of Florida—have each received an ownership percentage of all Vista current and future entities, including Plaintiff Vista Technologies.

Plaintiffs contend that Vista is a California corporation and complete diversity exists. In support, Plaintiffs proffer Vista's California LLC records which show that Armen Temurian is the entity's only member. Defendants argue that these records are self-serving, and that the plain language of the Agreement contradicts these records and establishes the PJM Defendants' ownership in Vista. Plaintiffs also argue that the Agreement was cancelled immediately after its inception when Defendants materially breached the contract. Plaintiffs further contend that even if Defendants contest the existence of a material breach, this would raise an issue of fact that is not appropriate for resolution on a motion to dismiss. In response, Defendants argue that even if there were a material breach, this does not erase Defendants' interest in the company.

The Agreement expressly recognizes that the PJM Defendants have obtained a 10% ownership of all Vista current and future direct and indirect entities, which contradicts Plaintiffs' proffered California LLC records on their face. Though Plaintiffs argue that the PJM Defendants'

material breach of the contract excused Plaintiffs' performance under the contract (i.e. making the PJM Defendants part-owners of Vista), the Agreement does not recognize that ownership will only be granted on a contingency basis. Instead, the Agreement recognizes that Piccolo/Johnson had already been awarded a 10% ownership interest in Vista and that Morris had already been awarded a 1% ownership interest in Vista. Because Vista is a citizen of every state that any member is a citizen of, Vista is a citizen of Florida, which destroys diversity. The Court therefore does not have diversity jurisdiction over this matter.

However, Plaintiffs have also brought three claims invoking federal question jurisdiction under 28 U.S.C. § 1331: (1) trademark infringement under the Lanham Act (Count 12); (2) unauthorized trafficking of password information under the CFAA (Count 14); and (3) misappropriation of trade secrets under the DTSA (Count 15). Defendants argue that these three claims are due to be dismissed for failure to state a claim, leaving the Court without federal question jurisdiction over any claim. Thus, the Court must examine whether Plaintiffs have properly pled claims that invoke the Court's federal question jurisdiction.

### 3. Federal Question Jurisdiction

#### a. Legal Standard for Rules 8 and 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's consideration is limited to the allegations in the complaint.

*GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

As an initial matter, the Court notes that Defendants filed an Answer (ECF No. 147) after they had filed their Motion to Dismiss, requesting that the Court treat this motion as a motion for judgment under the pleadings under Rule 12(c). A Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, because there is no substantive difference between motions filed under Rule 12(b)(6) and Rule 12(c), and because Defendants never actually moved for judgment on the pleadings, the Court will address the arguments made in Defendant's Motion to Dismiss as initially submitted.

### b. Trademark Infringement Under the Lanham Act (Count 12)

Defendants seek dismissal of Plaintiffs' trademark infringement claims, including Count 12, arguing that they constitute shotgun pleadings in violation of Rule 8 for failing to identify which Defendant—Travelada or Travelada International—is allegedly responsible for sending emails that infringe upon Plaintiffs' trademark.

A complaint must provide fair notice of the grounds for the claims made therein against each of the defendants. *See Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602-CIV-MARRA, 2006 WL 4590705, *5 (S.D. Fla. April 14, 2006). When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8, and constitutes a "shotgun pleading." *See Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D.

Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the [ ] Complaint fails to satisfy the minimum standard of Rule 8."). While a complaint against multiple defendants may be "read as making the same allegation against each defendant individually," the "factual allegations must give each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests." *George & Co., LLC v. Alibaba.com, Inc.*, No. 2:10-cv-719-FtM-29DNF, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011).

Count 12 alleges that Travelada and/or Travelada International have infringed upon Plaintiffs' trademarks and engaged in unfair competition under the Lanham Act by using Vista's customer list in order to send out numerous emails to Vista's customers "promoting Travelada and/or Travelada International and featuring prominent references to either the Vista trade name or the Mini Miner mark that were and are likely to cause confusion and/or mistake, and that have and will continue to deceive recipients" (SAC ¶ 216). These allegations are sufficient to put Travelada and Travelada International on fair notice of the claims against them and do not rise to the level of improper lumping to constitute a shotgun pleading. Though Defendants argue that the Complaint is actually grouping five different Defendants together, including the PJM Defendants, the Court has already dismissed Count 12 with respect to the PJM Defendant with prejudice. Thus, the only Defendants that need fair notice are those whom the claim is actually against: Travelada and Travelada International. Accordingly, Plaintiff has sufficiently pled Count 12 against Travelada and Travelada International.

    c. **Unauthorized Trafficking of Passwords Under CFAA (Count 14)**

Defendants seek dismissal of Count 14 asserting unauthorized trafficking of password information under the CFAA, 18 U.S.C. § 1030(a)(6), arguing that this claim also engages in

shotgun pleading, as well as fails to state a claim. To bring a claim under 18 U.S.C. § 1030(a)(6)(A), the plaintiff must adequately allege that the defendant knowingly and with the intent to defraud, trafficked a password or similar information through which a computer could be accessed without authorization. The CFAA defines "traffic" as to "transfer, or otherwise dispose of, to another, or obtain control of with the intent to transfer of dispose of." 18 U.S.C. § 1029(e)(5).

Count 14 alleges that the PJM Defendants, Travelada, and Travelada International utilized the Back Office Software without authorization to transfer "application programming interface (API) information" (which the parties do not dispute constitutes "password or similar information" under the CFAA) from Vista to Vista's Alfacoins account (SAC ¶ 240). By transmitting the API information, Defendants were able to gain access to Vista's Alfacoins and therefore obtained access to a significant number of bitcoin and other cryptocurrencies (*id.*). Defendants argue that these allegations cannot state a claim under the CFAA because Plaintiffs have not pled that Defendants engaged in the act of "trafficking." Instead, Defendants assert that Plaintiffs have merely pled that Defendants used Plaintiffs' API information for their own benefit, to misappropriate cryptocurrency, and did not "traffic" the information to any third party. Rather, the Second Amended Complaint only alleges that Defendants used the API information for its intended purpose, which was to communicate with the Alfacoins account in order to received cryptocurrency. The Court agrees. As pled, Count 14 alleges not that Defendants trafficked password or similar information to anyone else, but rather they used the information for another software interface that allowed them to disburse cryptocurrency to themselves. Accordingly, Count 14 is subject to dismissal.[1]

---

[1] Because Count 14 fails to state a claim under CFAA, the Court need not address whether Count 14 is a shotgun pleading.

### d. Misappropriation of Trade Secrets Under the DTSA (Count 15)

Defendants seek dismissal of Count 15 asserting a claim for misappropriation of trade secrets under the DTSA, based on Defendants' alleged misappropriation of Vista's customer list. The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA further defines misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances," which gives rise to a duty to maintain the secrecy or limit the use of the trade secret. 18 U.S.C. § 1839(5).

The Court has dismissed Plaintiffs' DTSA count once before in its previous Order on Defendants' Motion to Dismiss, finding that Plaintiffs had conceded that they gave the PJM Defendants access to the alleged confidential information and proprietary trade secrets, and that no confidentiality agreement protecting the information existed between the parties. The Court determined that Plaintiffs had failed to allege that they took any reasonable steps to safeguard the secrecy of their data, and accordingly dismissed Plaintiffs' misappropriation of trade secrets claims without prejudice.

Defendants argue that Plaintiffs have failed to cure the deficiencies of the previous complaint, and still have not stated a claim for the misappropriation of trade secrets. Defendants contend that while Plaintiffs have more fully described why their subject data is valuable, they still fail to identify any reasonable measures they took to restrict the Defendants' use of their data. In

response, Plaintiffs insist that the new allegations of their Amended Complaint have cured their deficiencies; namely, that the Complaint alleges that Temurian "demanded the master codes and passwords to the Back Office Software, including the return of its confidential, proprietary, and trade secret customer list" when he found out about the PJM Defendants' fraudulent schemes (SAC ¶ 77).

Count 15 is still deficient to state a claim under the DTSA. Plaintiffs demanding the return of their customer list, after the fact, does not constitute a reasonable step to safeguard the secrecy of the data. Thus Count 15 is due to be dismissed. Because this is Plaintiffs' second attempt at pleading this count, the count will be dismissed with prejudice.

### B. Supplemental Jurisdiction

Because Plaintiffs have stated at least one federal claim arising under federal law in their trademark infringement count under the Lanham Act (Count 12), the Court has federal question jurisdiction over this matter. However, the Court must still determine whether it is appropriate to exercise supplemental jurisdiction over the remaining seventeen state law claims. Pursuant to 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." But, a district court "may decline to exercise supplemental jurisdiction over a [state] claim under [§ 1367(a)] if . . . the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). This provision allows for district courts to decline to exercise supplemental jurisdiction "when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006).

13

The Court finds that the seventeen claims in the Amended Complaint brought under state law, which include breach of contract, promissory estoppel, breach of duty of good faith and fair dealing, conversion, civil theft, unjust enrichment, tortious interference, misappropriation of trade secrets, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, civil conspiracy, and usurpation of partnership opportunities and misuse of partnership assets, substantially predominate over the sole remaining Lanham Act count. The remaining federal law claim for trademark infringement encompasses only one set of Plaintiffs' pled allegations: the "impersonation scheme," in which Defendants' allegedly used Vista's customer list to mass email Plaintiffs' customers whilst impersonating Vista (SAC ¶¶ 86-115). The remaining alleged schemes, which include creating false customer profiles (*id.* ¶ 46); converting Vista's cryptocurrency (*id.* ¶¶ 47-59); fraudulently ordering and shipping Mini Miners (*id.* ¶¶ 60-71); laundering fraudulent gains procured through various Vista accounts (*id.* ¶¶ 72-75); disabling Vista's access to the Back Office (*id.* ¶¶ 76-85); and extorting Vista (*id.* ¶¶ 116-120); necessarily rely on the seventeen state law counts. Accordingly, the Court declines to exercise its supplemental jurisdiction over the state law claims in Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 16, 17, 18, 19, and 20. *See Altex USA Corp. v. Del Castillo Quintana*, No. 18-CV-20880, 2018 WL 6446574, at *3–4 (S.D. Fla. Dec. 10, 2018) (finding that five state law counts substantially predominated over one federal count, and declining to exercise supplemental jurisdiction); *Fusion Analytics Inv. Partners LLC v. Wealth Bridge Sols.*, LLC, No. 17-CV-61947, 2018 WL 2970712, at *5 (S.D. Fla. June 12, 2018) (finding that three state law counts substantially predominated over the one federal count, and declining to exercise supplemental jurisdiction). Those counts are dismissed without prejudice, and Plaintiffs may refile those claims in state court.

**III.    CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Second Amended Complaint (ECF No. 74) is **GRANTED IN PART** as follows:

1. The Motion to Dismiss is denied as to Count 12.

2. Count 14 is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs are given leave to amend <u>this count only</u> by November 18, 2019, only if they have sufficient facts to support their claim that they "trafficked" password within the meaning of the CFAA. In deciding whether to amend, Plaintiffs and their counsel shall abide by the dictates of Rule 11.

3. Count 15 is **DISMISSED WITH PREJUDICE**.

4. Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 16, 17, 18, 19, and 20 are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may refile those claims in state court.

5. Defendants shall file an answer within ten (10) days of the date of this Order.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 13th day of November, 2019.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc: Counsel of record