UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-62737-SMITH/VALLE

ARMEN A. TEMURIAN, *et al.*,

     Plaintiffs,

v.

PHILLIP A. PICCOLO, JR., *et al.*,

     Defendants.

_____/

## <u>REPORT AND RECOMMENDATIION TO DISTRICT JUDGE</u>

THIS MATTER is before the Court on Defendants' Verified Motion for Award of Attorneys' Fees (the "Motion for Fees") (ECF No. 218) and Motion for Bill of Costs[1] (the "Motion for Costs") (ECF Nos. 215, 216) (collectively, the "Motions"). United States District Judge Rodney Smith has referred the Motions to the undersigned for appropriate resolution. (ECF Nos. 219, 222). Accordingly, having reviewed the Motions, Plaintiffs' responses (ECF Nos. 217, 221), Defendants' replies (ECF Nos. 220, 223), and being otherwise duly advised in the matter, the undersigned respectfully recommends that Defendants' Motion for Fees be **DENIED** and Defendants' Motion for Costs be **GRANTED IN PART**, for the reasons set forth below.

## I.    <u>PROCEDURAL HISTORY</u>

The procedural history of this case is set forth in the prior opinions of the District Court, which are incorporated by reference. *See* (ECF Nos. 59, 192, 214). Relevant here, Plaintiffs

---

[1] The Motions are brought by Defendants Phillip A. Piccolo, Jr. ("Piccolo"), Kevin Dalton Johnson ("Johnson"), Paul Morris ("Morris") (together, the "PJM Defendants"), Joseph Reid ("Reid"), Travelada, LLC ("Travelada") and K.F.I. Software ("K.F.I.").

Armen A. Temurian ("Temurian") and Vista Technologies LLC ("Vista") filed a seventeen-count Complaint, which included allegations against the PJM Defendants, Reid, and Travelada for violations of the Lanham Act (Count 11), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 13), the Defend Trade Secrets Act of 2016 ("DTSA") (Count 15), and Florida's Uniform Trade Secrets Act ("FUTSA") (Count 16), along with a multitude of state law claims.[2] *See generally* (ECF No. 1). Thereafter, Plaintiffs filed an Amended Complaint, essentially incorporating the above counts and adding a count for breach of fiduciary duty (Count 18) and aiding and abetting a breach of fiduciary duty (Count 19). *See generally* (ECF No. 33).

Defendants moved to dismiss the Amended Complaint. (ECF No. 36). On April 22, 2019, the District Judge dismissed with prejudice the Lanham Act (Count 11) and FDUTPA (Count 13) claims against the PJM Defendants. *See generally* (ECF No. 59) (the "First Dismissal Order"). The District Judge dismissed these counts based on an Agreement, as defined in ECF No. 59, which established the PJM Defendants' co-ownership of Vista. *Id*. at 3, 18-20. Based on this Agreement, the District Judge concluded that "Plaintiffs cannot state a claim against the co-owner of a trademark for trademark infringement."[3] *Id*. at 19. In addition, the District Judge dismissed

---

[2] Specifically, the Complaint alleged the following violations: breach of contract (Count 1); conversion (Counts 2-5); fraudulent misrepresentation (Count 6); fraudulent concealment (Count 7); fraud in the inducement (Count 8); conspiracy to commit fraud (Count 9); tortious interference (Count 10); trademark infringement and unfair competition under the Lanham Act (Count 11); common law trademark infringement and unfair competition (Count 12); violations of the FDUTPA (Count 13); unjust enrichment (Count 14); misappropriation of trade secrets under the DTSA (Count 15); misappropriation of trade secrets under the FUTSA (Count 16); and constructive trust (Count 17). *See generally* (ECF No. 1).

[3] Thereafter, Plaintiffs filed a Motion for Partial Reconsideration of the First Dismissal Order, arguing that a "minority ownership in the equity of the company does not constitute ownership of its assets or marks" under the Lanham Act and that the subsequent termination of the Agreement ended any ownership rights the PJM Defendants may have had. (ECF No. 70). The District Judge denied the Motion for Reconsideration. (ECF No. 95).

without prejudice Plaintiffs' DTSA and FUTSA claims (Counts 15 and 16) on the grounds that Plaintiffs had failed to allege that they had taken "reasonable steps to safeguard the secrecy of their data." *Id.* at 22-23.

On May 3, 2019, Plaintiffs filed a Second Amended Complaint (the "SAC").[4]   *See generally* (ECF No. 71).  The SAC added Defendants George Foerst, d/b/a Travelada International ("Travelada International") and K.F.I.  *Id.*  All named Defendants filed a motion to dismiss the SAC on May 12, 2019.[5]  *See* (ECF No. 74).  While Defendants' motion to dismiss the SAC was pending, the parties continued to engage in discovery and motion practice.

On November 13, 2019, the District Judge dismissed all federal causes of action, except for Count 12 (Lanham Act claim against Defendants Travelada and Travelada International) (the "Second Dismissal Order").  (ECF No. 192).  In the Second Dismissal Order, the District Judge dismissed without prejudice the CFAA claim (Count 14) for failure to allege that Defendants had "trafficked password or similar information," as required by the statute.[6]  *Id*. at 11.  Next, the

---

[4] The Second Amended Complaint alleged breach of contract (Count 1); promissory estoppel (Count 2); breach of service contract (Count 3); breach of the duty of good faith and fair dealing of the service contract (Count 4); conversion (Counts 5, 6, 8, 9); civil theft (Count 7); unjust enrichment (Count 10); tortious interference (Count 11); trademark infringement and unfair competition under the Lanham Act against Defendant Travelada and Travelada International (Count 12); common law trademark infringement and unfair competition (Count 13); unauthorized trafficking of password information in violation of the Computer Fraud and Abuse Act ("CFAA") (Count 14); violation of the DTSA (Count 15); violation of the FUTSA (Count 16); breach of fiduciary duty (Count 17); aiding and abetting breach of fiduciary duty (Count 18); civil conspiracy (Count 19); and usurpation of partnership opportunities and misuse of partnership assets (Count 20).  (ECF No. 71).

[5] Also relevant here, in September 2019, Defendants filed various counterclaims for fraud in the inducement, slander per se, breach of contract, breach of fiduciary duty, and violation of Cal. Corp. Code § 17704.10.  *See generally* (ECF No. 147).

[6] The Court allowed Plaintiffs to amend this count by November 18, 2019 "only if they ha[d] sufficient facts to support their claim that [Defendants] 'trafficked' password [information] within the meaning of the CFAA."  *Id.* at 15.

District Judge dismissed the DTSA claim (Count 15), this time with prejudice, noting that the SAC still failed to allege any facts to establish that Plaintiffs had taken "any reasonable steps to safeguard the secrecy of their data."[7]  *Id*. at 13.  The District Judge then declined to exercise supplemental jurisdiction over the remaining state law claims, finding that the state law claims "substantially predominated" over the sole remaining federal claim in Count 12 (the Lanham Act claim against Travelada and Travelada International), and were more appropriately pursued in state court.  *Id*. at 14.  Consequently, the District Judge dismissed the common law and state claims without prejudice.  *Id*. at 15.

One day after entry of the Second Dismissal Order, Defendants filed a motion for summary judgment as to Count 12 in the SAC, the lone remaining Lanham Act claim.  *See* (ECF No. 194). However, before the summary judgment motion could be decided, Plaintiffs filed a motion to voluntarily dismiss the SAC under Rule 41(a)(2).  (ECF No. 196).  In this motion, Plaintiffs conceded that "standing alone without the other claims, [Count 12] is not as strong as the other claims," so that Plaintiffs wished to dismiss the SAC and re-file in state court.  *Id*. at 2.  Defendants objected to a voluntary dismissal without prejudice, citing to its pending counterclaims.  *See generally* (ECF No. 197).  Ultimately, the District Judge found that Defendants' counterclaims could "remain pending following dismissal of Plaintiffs' claim," dismissed the SAC without prejudice, and declined to exercise supplemental jurisdiction over Defendants' counterclaims.  *See* (ECF No. 214) (the "Voluntary Dismissal Order").  In so doing, the District Judge recognized the significant expenses incurred in litigating this case, but noted that "these expenses primarily arose

---

[7] Instead of adding information to the SAC describing the steps taken to safeguard the data, Plaintiffs added language showing that they had demanded the return of the allegedly protected information "after the fact."  *Id.* at 13.  The District Judge found this insufficient.  *Id.*

out of the excessive, combative, and often times unnecessary motion practice conducted by *both* parties." *Id.* at 3 n.1 (emphasis in original).

The instant Motions followed.  *See* (ECF Nos. 215, 218).  In the Motion for Fees, Defendants urge the Court to exercise its discretion to award fees under one of three applicable fee shifting statutes: (i) $107,680 in fees under the Lanham Act's "exceptional case" standard (Count 11 in Amended Complaint; Count 12 in SAC); (ii) $27,840 in fees as the prevailing party under FDUTPA (Count 13 in Amended Complaint);[8] (iii) $98,760 in fees under the DTSA/FUTSA based on Plaintiffs' bad faith in alleging misappropriation of trade secrets (Counts 15 and 16, respectively, in Amended Complaint and SAC).  (ECF No. 218 at 16-17).  Defendants also seek $12,263.72 in taxable costs pursuant to 28 U.S.C. § 1920 and Rule 54(d).  *See generally* (ECF Nos. 215, 216).

Plaintiffs oppose the Motions.  First, Plaintiffs assert that Defendants' request for fees is untimely under Local Rule 7.3(a)(1).  (ECF No. 221 at 5-6).  As to the Lanham Act claims, Plaintiffs argue that: (i) Defendants are not the prevailing parties because Plaintiffs' voluntary dismissal foreclosed an adjudication on the merits; and (ii) this is not an "exceptional case" warranting the award of fees under the Lanham Act.  *Id.* at 9-13.  Additionally, Plaintiffs argue that the DTSA and FUTSA trade secret misappropriation claims were brought in good faith, thus making an award of fees inappropriate.  *Id.* at 7-9.

Plaintiffs likewise oppose Defendants' requests for taxable costs.  As with the fees, Plaintiffs argue that the motion for costs is untimely under Local Rule 7.3(c).  (ECF No. 217 at 2-4).  Plaintiffs also argue that an award of costs would be unfair because some costs were caused by delays over which Plaintiffs had no control, such as tactical errors by their prior counsel

---

[8] Notably, Plaintiffs did not reassert the FDUTPA claim in the SAC.

and the Court's own schedule.  *Id.* at 4-6.  Plaintiffs also argue that, to the extent Defendants can

be considered to have prevailed, Plaintiffs also prevailed in that the Court permitted the voluntary

dismissal of their case, so that neither party prevailed and "everyone should just walk away."  *Id.*

at 6.  Alternatively, Plaintiffs argue that if the Court is inclined to award costs, then the Court

should reduce Defendants' requested costs based on Plaintiffs' financial condition.  *Id.* at 7.

### III.  LEGAL STANDARDS

#### A.  Motion for Fees and Costs under Local Rule 7.3

Local Rule 7.3 governs motions for attorneys' fees and costs (taxable and non-taxable) in

this District.  In relevant part, it provides:

> (a)  . . . A motion for an award of attorneys' fees and/or non-taxable expenses and
> costs, arising from the entry of a final judgment or order shall not be filed until a
> good faith effort to resolve the motion . . . has been completed.  The motion shall:
>
> > (1) be filed and served within sixty (60) days of the entry of the final
> > judgment or order giving rise to the claim, regardless of the prospect
> > or pendency of supplemental review or appellate proceedings.
>
> *            *            *
>
> (c) A bill of costs pursuant to 28 U.S.C. § 1920 shall be filed and served within
> thirty (30) days of entry of final judgment or other appealable order that gives rise
> to a right to tax costs under the circumstances listed in 28 U.S.C. § 1920 . . . .

L.R. 7.3(a)(1), (c).

#### B.  Entitlement to Fees

*1.     Entitlement to Attorneys' Fees Generally*

Under the "American Rule," litigants generally are not entitled to an award of attorneys'

fees for prevailing in litigation unless provided by statute or contract.  *Hardt v. Reliance Standard*

*Life Ins. Co.*, 560 U.S. 242, 253 (2010) (internal citations omitted); *see also In re Martinez*, 416

F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of

attorneys' fees unless provided by statute or contract).  Here, however, the following statutes provide for the discretionary award of reasonable attorneys' fees and costs to the prevailing party if certain conditions are met:  (i) the Lanham Act, which permits an award of reasonable attorneys' fees to the prevailing party in "exceptional" cases (15 U.S.C. § 1117); (ii) the DTSA and FUTSA, which allow for fees when a party pursues a trade secret claim in "bad faith" (18 U.S.C. § 1836(b)(3)(D), Fla. Stat. § 688.005); and (iii) FDUTPA, which permits an award of attorneys' fees to the prevailing party under certain circumstances (Fla. Stat. § 501.2105(1)).

2.    *Fees under the Lanham Act*

The Lanham Act permits the award of fees to a prevailing party in "exceptional cases."  A party is considered to have prevailed when there has been "a material alteration in the legal relationship of the parties."  *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003).  Thus, to be considered a prevailing party, "there must be: (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim *or* (2) a judicial *imprimatur* on the change in the legal relationship between the parties."  *Id.*  (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 603, 605 (2001)) (internal citations omitted).  Consequently, a party is not considered to be the "prevailing party" after a voluntary dismissal without prejudice under Rule 41(a)(2).  Such a voluntary dismissal "places no judicial *imprimatur* on the legal relationship of the parties, which is the touchstone of the prevailing party inquiry."  *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1303 (11th Cir. 2019) (citation and internal quotation marks omitted).  Rather, a voluntary dismissal without prejudice "renders the proceedings a nullity and leaves the parties as if the action had never been brought."  *Id.* (citation omitted).

Once a party is found to have prevailed in the litigation, the Court next considers whether the case is an "exceptional case" warranting the award of fees under the Lanham Act. 15 U.S.C. § 1117(a). In 2014, the Supreme Court established the current framework for determining what is an "exceptional" case under § 285 of the Patent Act. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). In *Octane Fitness*, the Court noted that the phrase "exceptional case" in the Patent Act's fee-shifting provision should be interpreted in accordance with its ordinary meaning to mean "uncommon," "rare," or "not ordinary." *Id.* Further, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554. The Court instructed that whether a case is "exceptional" should be determined on a case-by-case exercise of discretion, considering the "totality of the circumstances" and using a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). Lastly, the Court lowered the requisite evidentiary standard for proving an "exceptional" case from clear and convincing evidence to a preponderance of evidence. *Id.* at 557.

Relevant here, the Eleventh Circuit has held that the Patent Act's "exceptional case" standard also applies to cases brought under the Lanham Act. *Tobinick v. Novella,* 884 F.3d 1110, 1118 (11th Cir. 2018). However, courts have noted that, "although the post-*Octane Fitness* fee inquiry is guided by a more lenient standard, an attorney's fee award is still the exception to the American Rule and should be reserved only for rare circumstances." *Net Talk.com, Inc. v. Magic Jack Vocaltec Ltd.*, No. 12-CV-81022, 2015 WL 10015379, at *3 (S.D. Fla. Nov. 20, 2015), *report*

*and recommendation adopted sub nom. Net Talk.com, Inc. v. Magicjack Vocaltec Ltd.*, No. 12-81022-CIV, 2016 WL 498437 (S.D. Fla. Feb. 9, 2016), *aff'd*, 682 F. App'x 941 (Fed. Cir. 2017).

    *3.    Fees under FDUTPA*

Section 501.2105 of FDUTPA provides for the discretionary award of reasonable attorneys' fees and costs to the prevailing party. *Sodikart USA v. Geodis Wilson USA, Inc.*, No. 14-CV-22461, 2014 WL 6968073, at *3 (S.D. Fla. Dec. 9, 2014) (citation omitted). More specifically, it provides that "[i]n any civil litigation resulting from an act or practice involving a violation[,] the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive [its] reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1).

Once a party is declared to be the prevailing party, the court may exercise its discretion to determine whether fees are warranted. *Humane Soc. of Broward Cnty., Inc. v. Florida Humane Soc.*, 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007). In exercising this discretion, courts consider the following non-exhaustive factors: (i) the scope and history of the litigation; (ii) the ability of the opposing party to satisfy an award of fees; (iii) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (iv) the merits of the respective positions, including the degree of the opposing party's culpability or bad faith; (v) whether the claim brought was not in subjective bad faith but [was] frivolous, unreasonable, groundless; (vi) whether the defense raised a defense mainly to frustrate or stall; and (vii) whether the claim brought was to resolve a significant legal question under FDUTPA law. *Sodikart*, 2014 WL 6968073, at *3 (citing *Humane Soc.*, 951 So. 2d at 972).

Nonetheless, a prevailing party is not entitled to attorneys' fees under FDUTPA if the FDUTPA claim was "inseparably intertwined" with the Lanham Act claims and the prevailing

party did not demonstrate any separate expenditure of time defending the FDUTPA claims. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, No. 6:09-CV-1945-Orl-28GJK, 2013 WL 1174399, at *7 (M.D. Fla. Feb. 7, 2013); *see also Nat. Answers, Inc., v. Smithkline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008) (finding that a FDUTPA claim "rises or falls" on the success of Lanham Act claims); *ADT, LLC v. Alarm Prot. Tech. Fla.*, LLC, No. 12-80898-CIV, 2016 U.S. Dist. LEXIS 146226, *13 (S.D. Fla. Oct. 20, 2016) (finding that a prevailing party is not entitled to fees under FDUTPA "where the FDUTPA claim was incidental to the primary claim.") (citation omitted).

### 4. *Fees under DTSA/FUTSA*

Pursuant to DTSA, a court may award reasonable attorney's fees to a prevailing party when a claim of the misappropriation is made in "bad faith."  18 U.S.C. § 1836(b)(3)(D).  Bad faith may be established by circumstantial evidence, or when a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated.  *Id.* Although the Eleventh Circuit has not addressed what constitutes "bad faith" for purposes of the DTSA, there is ample precedent as to what constitutes "bad faith" warranting the award of attorneys' fees.  For example, courts have awarded fees not only when a lawsuit is brought in bad faith, but also when there are bad faith acts preceding and during litigation.  *Mar. Mgmt., Inc. v. United States*, 242 F.3d 1326, 1333 (11th Cir. 2001) (citing *Kreager v. Solomon and Flanagan*, 775 F.2d 1541, 1543 (11th Cir. 1985), *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765-66 (1980)).

Accordingly, "[i]n determining the propriety of a bad faith fee award, 'the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case.'"  *Id.* (citing *Rothenberg v. Security Mgmt. Co.,* 736 F.2d 1470, 1472 (11th Cir.1984) (citation omitted)).

Bad faith requires more than mere negligence and warrants fees "where an attorney knowingly or recklessly pursues a frivolous claim or engages in tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225-26 (11th Cir. 2003) (citations omitted). Thus, litigants must meet a high bar to establish bad faith, which requires evidence "that a plaintiff both knew that his or her claim was meritless and pursued it with the purpose of harassing the defendant." *Montero-Hernandez v. Palisades Collection, LLC*, No. 6:12-CV-1736-ORL-22, 2014 WL 505119, at *5 (M.D. Fla. Feb. 7, 2014) (citing *Conner v. BCC Fin. Mgt. Servs., Inc.*, 597 F. Supp. 2d 1299, 1309 (S.D. Fla. 2008) (citation omitted). Merely prevailing on a dispositive motion (e.g., a motion to dismiss) is insufficient to show that a plaintiff acted in bad faith or for the purpose of harassment. *See Heald v. Ocwen Loan Servicing, LLC*, 2014 WL 4639410, at *6 n.16 (M.D. Fla. Sept. 16, 2014) ("The Court's finding that [plaintiff] does not state a claim . . . does not equate to a finding that she proceeded in bad faith and for the purpose of harassment"). Rather, a plaintiff's conduct must be "objectively specious or frivolous," and there must be "evidence of subjective misconduct." *Knights Armament Co. v. Optical Sys. Tech.*, 2012 WL 3932863, at *4 (M.D Fla. Aug. 20, 2012). Moreover, subjective misconduct is found to exist "where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit," and may be proven by direct evidence of actual knowledge or may be inferred from the speciousness of plaintiff's trade secret claim and its conduct during litigation. *Id.* at *4 (internal citations omitted).

Defendants also request fees under FUTSA. (ECF No. 218 at 11-13). The FUTSA closely mirrors the DTSA and provides that "[i]f a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious

misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Fla. Stat. § 688.005.

## III.   DISCUSSION

### A.   The Motions are Timely

Plaintiffs argue that the Motion for Fees and Motion for Costs are untimely because they were filed more than 60 days and 30 days, respectively, after entry of the Court's Dismissal Orders on April 22, 2019 and November 13, 2019.  For example, as to the Lanham Act and FDUPTA claims, Plaintiffs argue that the fees motion should have been filed by June 21, 2019—60 days after the Court dismissed with prejudice Counts 11 and 13 of the Amended Complaint as to the PJM Defendants in the First Dismissal Order.  (ECF No. 221 at 6, 11).  As to the DTSA claim, Plaintiffs argue that the fees motion should have been filed on January 12, 2020—60 days after the Court dismissed with prejudice Count 15 of the SAC in the Second Dismissal Order.  *Id*. at 7. The Motion for Fees, however, was not filed until May 2020.  To support the argument that the Motion for Fees is  untimely, Plaintiffs rely on the language of Local Rule 7.3(a) that a motion for fees "shall be filed and served within sixty (60) days of entry of final judgment or order" giving rise to fees.  S.D. Fla. L.R. 7.3(a).  Plaintiffs make the same argument regarding the Motion for Costs, which was filed more than 30 days after entry of the First and Second Dismissal Orders. *See* S.D. Fla. L.R. 7.3(c).  (ECF No. 217 at 2-4).

But Plaintiffs misinterpret the language of the Local Rule.  Indeed, Plaintiffs' interpretation of the timing requirement in Rule 7.3 has been previously rejected.  *See League of Women Voters of Fla. v. Browning*, No. 06-21265-CIV, 2008 U.S. Dist. LEXIS 108147, at *10, 2008 WL 5733166 (S.D. Fla. Dec. 4, 2008), *report and recommendation adopted in relevant part*, 2009 U.S. Dist. LEXIS 20960 (S.D. Fla. Mar 16, 2009).  As the court explained in in *League of Women*

*Voters*, Plaintiffs' interpretation of Local Rule 7.3 would require a litigant to move for interim fees at every step along the way to avoid forfeiting fees in the event the District Court does not ultimately enter a final judgment in the case. Under Plaintiffs' reasoning, "a request for interim attorney's fees would effectively become mandatory following the issuance of every appealable order wherein attorney's fees are recoverable." *Id.* at *10. The undersigned finds this reasoning persuasive, and similarly concludes that Local Rule 7.3 permits a prevailing party to move for fees at the conclusion of the litigation. This reading of Rule 7.3 is consistent with and promotes judicial economy and efficiency. Accordingly, the undersigned finds that the Motions are timely filed.

### B.    Fees are not Warranted under the Lanham Act

In considering the appropriateness of fees under the Lanham Act, the undersigned must first determine whether Defendants prevailed on the Lanham Act claims. In this regard, the First Dismissal Order dismissed with prejudice the Lanham Act claim (Count 11, Amended Complaint) against the PJM Defendants. (ECF No. 59 at 24). Because the dismissal was with prejudice, the PJM Defendants prevailed as to the Lanham Act claim in the Amended Complaint. *See e.g., Sodikart,* 2014 WL 6968073, at *3 (finding defendant is prevailing party when motion to dismiss was granted); *see also Montgomery v. Noga*, 168 F.3d 1282, 1304 (11th Cir. 1999) (holding that the prevailing party is "the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit.") (citation omitted). Moreover, Plaintiffs do not dispute that Defendants prevailed on Count 11 in the Amended Complaint. *See* (ECF No. 221 at 11) (Plaintiffs' argument that to the "extent the Lanham Act was improperly pled originally, and was dismissed with prejudice on April 22, 20[19]," Defendants' motion for fees is untimely).

Although the PJM Defendants prevailed on the Lanham claim in the Amended Complaint, the same cannot be said for Defendants Travelada and Travelada International, who were charged

with a Lanham Act violation in Count 12 of the SAC.  As to these Defendants, Plaintiffs' May 2020 voluntary dismissal of Count 12 of the SAC did not inure them with prevailing party status.  As discussed above, a voluntary dismissal does not sufficiently alter the relationship between the parties as to give these Defendants "prevailing party" status.[9]  A voluntary dismissal "places no judicial *imprimatur* on the legal relationship of the parties, which is the touchstone of the prevailing party inquiry."  *$70,670.00 in U.S. Currency*, 929 F.3d at 1303 (internal quotation marks omitted).

Having found that the PJM Defendants prevailed in obtaining dismissal with prejudice of Count 11 of the Amended Complaint, the undersigned next considers whether this case meets the "exceptional case" standard to warrant the award of reasonable attorneys' fees.  Defendants argue that this case is exceptional both for its lack of substantive strength and the unreasonable manner in which it was litigated.  (ECF No. 218 at 8-10).  In support of their argument, Defendants point out that the Lanham Act claim in the Amended Complaint was dismissed with prejudice early in the litigation for failure to state a claim.  (ECF No. 59 at 18-20).  Additionally, Plaintiffs ultimately voluntarily dismissed the Lanham Act claim (Count 12) in the SAC against Travelada and Travelada International, concededly to avoid an adverse ruling on Defendants' pending motion for summary judgment.  (ECF Nos. 196 at 3, 221 at 10-12).

Whether a case is "exceptional" is determined on a case-by-case exercise of discretion, considering the "totality of the circumstances" and using a nonexclusive list of factors, as previously discussed.  *Octane Fitness*, 572 U.S. at 554 n.6 (citing *Fogerty*, 510 U.S. 517).  As

---

[9] Defendants cite various cases to support the argument that the voluntary dismissal here served to conclude the case, giving Defendants "prevailing party status." (ECF No. 223 at 8) (citing *Alhambra Homeowners Ass'n, Inc. v. Asad*, 943 So. 2d 316, 319 (Fla. 4th DCA 2006); *Rural Int'l Bank Ltd. v. Key Fin. Inv. Grp. Ltd. Liab. Co.*, No. 16-22280-Civ, 2018 U.S. Dist. LEXIS 153898 (S.D. Fla. Sep. 7, 2018); *RABCO Corp. v. Steele Plaza, LLC*, No. 6:16-CV-1858-Orl-40KRS, 2018 U.S. Dist. LEXIS 227802, at *9 (M.D. Fla. Aug. 9, 2018).  These cases, however, relate to contractual fee shifting provisions governed by Florida law, not federal fee shifting statutes.

discussed below, after considering the factors in *Octane Fitness* and the totality of the circumstances, the undersigned finds that this is not an "exceptional case" warranting an award of fees.

>    1.   *Substantive Strength of Plaintiffs' Claims*

Under *Octane Fitness*, a court must first evaluate "the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)." *Id.* at 554.  As in patent cases, there is no precise formula for determining whether a Lanham Act case is "exceptional" based on its lack of substantive strength.  *Id.*  Rather, as with the other *Octane Fitness* factors, courts must use discretion in considering the totality of the circumstances.  *Id.*  In the Lanham Act context, some courts have awarded fees when the claim was found to be "objectively baseless."  *See, e.g., Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, No. 13-21604-CIV, 2017 WL 3610583, at *4 (S.D. Fla. Aug. 11, 2017) (listing cases using the "objectively baseless" standard), *report and recommendation adopted*, No. 13-CV-21604, 2018 WL 4409885 (S.D. Fla. June 25, 2018).  In contrast, other courts have declined to award fees where the plaintiff's overall case was "at least colorable."  *Plant Food Sys., Inc., v. AgroSource, Inc.*, No. 16-CV-80326, 2017 WL 4155356, at *6 (S.D. Fla. July 19, 2017) (declining to award fees where losing party's position during preliminary injunction hearing was not "frivolous or completely unsupported by the evidence"); *Fla. Van Rentals Inc. v. Auto Mobility Sales, Inc.*, No. 8:13-CV-1732-T-36EAJ, 2015 WL 4887550, at *3 (M.D. Fla. Aug. 17, 2015) ("[A]lthough the totality of the evidence supporting the validity of [the] marks was weak, [p]laintiffs overall case was at least colorable").  Finally, courts have held that "for a case dismissed before trial to be designated exceptional, evidence of the frivolity of the claims must be reasonably clear without

requiring a 'mini-trial' on the merits for attorneys' fees purposes." *Net Talk.com*, 2015 WL 10015379, at *5.

Here, the Lanham Act claim (Count 11) against the PJM Defendants in the Amended Complaint was dismissed early in the litigation. In doing so, the Court noted that the PJM Defendants had a 10% ownership interest in Vista by virtue of an Agreement with Plaintiffs, and therefore, as co-owners could not be held liable for trademark infringement. (ECF No. 59 at 18). Nonetheless, Defendants' success on the motion to dismiss is not itself sufficient to establish exceptionality. Indeed, if success on a motion to dismiss was the appropriate standard, "exceptionality" would become the rule, rather than the exception. But that is not what the Supreme Court found in *Octane Fitness*. Rather, the Supreme Court interpreted "exceptional" in accordance with its ordinary meaning to mean "uncommon," "rare," or "not ordinary." *Octane Fitness,* 572 U.S. at 553. Moreover, although Plaintiffs lost their argument, they provided at least colorable explanations for their position.[10] Accordingly, this factor does not weigh in favor of fees.

### 2. *Plaintiffs' Overall Litigation Conduct and Motivation for Filing Suit*

The next *Octane Fitness* factor is whether the case was litigated in an unreasonable manner. 572 U.S. at 554. In making this determination, courts often consider a non-exhaustive list of factors, including: (i) whether the plaintiff failed to conduct an adequate pre-filing investigation or exercise due diligence before filing suit; (ii) whether the plaintiff should have known its claim was meritless and/or lacked substantive strength; (iii) evidence that the plaintiff initiated litigation to

---

[10] For example, Plaintiffs argued that: (i) the terms of the Vista Agreement with the PJM Defendants was ambiguous as to the term "ownership;" (ii) the contract between the parties had been breached and terminated so that Defendants could not continue to use the marks after the termination; and (iii) any ownership rights in Vista's assets did not mean that the PJM Defendants had ownership rights in Vista's trademarks. *See generally* (ECF No. 70)

extract settlements from defendants who want to avoid costly litigation; (iv) whether a party proceeded in bad faith (noting that bad faith is no longer required to support an award of fees but finding the plaintiff's position was not reasonable); and (v) the existence of litigation misconduct. *Fla. Int'l U. Bd. of Trustees*, 2017 WL 3610583, at *4 (citation omitted).

As discussed above, while Plaintiffs claim proved unsuccessful, the claim was at least colorable.  Moreover, Plaintiffs' litigation conduct was not so unreasonable as to warrant a finding of "exceptionality."  As the District Judge noted in the Voluntary Dismissal Order, this case was aggressively litigated on *both* sides.  (ECF No. 214 at 2 n.1) (emphasis in original).  That said, however, Plaintiffs did not engage in the kind of dilatory, "scorched earth," or otherwise abusive litigation tactics that would warrant an "exceptional case" finding.  Fees are awarded on litigation conduct that generally "goes beyond mere stonewalling, excessive discovery demands, or otherwise burdensome litigation strategies."[11]  *Fla. Int'l U. Bd. of Trustees,* 2017 WL 3610583, at *4 (citations omitted).  Notably, although the District Judge referenced the aggressive litigation tactics by both sides, and ultimately dismissed Plaintiffs' claims almost in full after more than a year of litigation, none of the District Judge's orders contain any language that would indicate any suspicion or concern that any of the parties had engaged in bad faith litigation conduct, failed to adequately investigate its claims, or engaged in otherwise sanctionable conduct.  *See generally*

---

[11] Courts generally find "exceptional" cases those where the litigation involved egregious conduct and protracted litigation, often including substantive and case-dispositive motions.  *See, e.g., Domond v. Peoplenetwork APS,* No. 16-24026-CIV-MORENO, 2017 U.S. Dist. LEXIS 214666 (S.D. Fla. Nov. 14, 2017), *aff'd* 2019 U.S. App. LEXIS 26824 (11th Cir. 2018) (awarding fees as "exceptional case" after protracted litigation, including arbitration proceeding, dismissal, and appeal); *Shipping and Transit, LLC v. A1A Auto, Inc.*, 283 F. Supp. 3d 1290 (S.D. Fla. Oct. 20, 2017) (awarding fees to prevailing Patent Act defendant based partly on plaintiff's nationwide pattern of pervasive and abusive litigation tactics); *Advanced Ground Info. Sys., Inc. v. Life360, Inc.,* No. 14-CV-80651-MIDDLEBROOKS, 2015 WL 11401854 (S.D. Fla. Dec. 1, 2015) (awarding fees to prevailing Patent Act defendant after trial, where plaintiff's claims were extremely weak and litigation was designed to extract a settlement).

(ECF Nos. 59, 192, 214).  Against this backdrop, and as the Supreme Court has observed, it is "the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  *Octane Fitness*, 572 U.S. at 555.  This is not such a case.

### 3.   *Considerations of Compensation and Deterrence*

Lastly, the undersigned must weigh whether considerations of compensation and deterrence weigh in favor of an award of fees.  *See Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty*, 510 U.S. at 534 n.19).  Defendants argue that after more than one year of litigation, they are "left with a somewhat hollow victory in that Plaintiffs' claims were all dismissed but [Defendants are] left holding the proverbial bag to pay for Plaintiffs' onslaught." (ECF No. 218 at 13-14).  Moreover, Defendants cite to the unequal financial footing of the parties to argue that they are "individuals (excluding Travelada) of limited financial means who were unnecessarily forced to incur tens of thousands of dollars in fees defending matters that should have never been brought in the first place."  *Id*. at 13.  Under these circumstances, Defendants argue that it would be "tremendously unfair" to deny their fees.  *Id*. at 14.

Although the undersigned is not unsympathetic to Defendants' substantial expenditure of time, effort, and money to defend this case, there is simply no evidence in the record that Plaintiffs initiated this lawsuit to extract an early settlement, failed to conduct an adequate pre-suit investigation, or engaged in some general misconduct or other scheme that should be deterred.  Overall, Plaintiffs' litigation conduct was not so unreasonable or its position so groundless as to tilt the compensation and deterrence factors in Defendants' favor.  Accordingly, the undersigned finds that considerations of compensation and deterrence are not implicated here.

### 4.  The Totality of the Circumstances Weigh Against an Award of Fees

Considering the totality of the circumstances—including Plaintiffs' nonfrivolous arguments in support of their claims, the lack of evidence of improper conduct before or during the litigation, and the absence of proof that Plaintiffs brought this lawsuit to extract a settlement or for some other improper motive—the undersigned finds that Defendants have not established by a preponderance of evidence that this is an "exceptional" case that warrants the award of fees under the Lanham Act.

### C.     Fees are Not Warranted under FDUPTA

Alternatively, Defendants argue that they are entitled to attorneys' fees as the prevailing party on Count 13 (FDUPTA claim) of Plaintiffs' Amended Complaint.  *See* (ECF No. 218 at 5-8). The First Dismissal Order dismissed this count with prejudice as to the PJM Defendants (but not as to Defendant Travelada), and Plaintiffs did not reallege any FDUTPA claim in the SAC. Although Plaintiffs oppose Defendants' request for FDUTPA fees as untimely, they do not address whether Defendants prevailed on the FDUTPA count.

Here, the First Dismissal Order dismissed the FDUTPA claim against the PJM Defendants with prejudice.  Accordingly, the PJM Defendants are prevailing parties on this claim.[12]  *See e.g., Sodikart,* 2014 WL 6968073, at *3 (holding that defendant is prevailing party when its motion to dismiss was granted); *see also Montgomery,* 168 F.3d at 1304 (holding that the prevailing party is "the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit.").  Nonetheless, even a prevailing party is not entitled to attorneys' fees under FDUTPA if the FDUTPA claim was "inseparably intertwined" with the Lanham Act claim and the prevailing party did not demonstrate any separate expenditure of time defending the

---

[12] Defendant Travelada, however, as to whom the Count was not dismissed with prejudice, is not.

FDUTPA claim.  *Suntree Techs.*, 2013 WL 1174399, at *7; *see also Nat. Answers*, 529 F.3d at

1333 (finding that a FDUTPA claim "rises or falls" on the success of Lanham Act claims).

 Here, the undersigned finds that the FDUTPA claim was inextricably intertwined with the

Lanham Act claim.  The undersigned's conclusion is supported by the language in the First

Dismissal Order.  In dismissing the Lanham Act and FDUTPA claims with prejudice against the

PJM Defendants, the District Judge stated:

> A "federal cause of action under the Lanham Act often mirrors a cause of action
> brought under FDUTPA."  *Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301
> F. Supp. 3d 1267, 1276 (S.D. Fla. 2017) (citing *Suntree Techs. Inc. v. Ecosense,
> Int'l*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("The legal standards [the Eleventh
> Circuit] appl[ies] to . . . [FDUTPA] claim[s] are the same as those [the Eleventh
> Circuit] ha[s] applied under section 43(a) of the Lanham Act.")).  FDUTPA
> "protect[s] the consuming public and legitimate business enterprises from those
> who engage in unfair methods of competition, or unconscionable, deceptive, or
> unfair acts or practices in the conduct of any trade or commerce." Fla. Stat.
> § 501.202(2).
>
> Defendants argue that because Plaintiffs' FDUTPA claim is based upon the same
> underlying allegations as Plaintiffs' trademark claims, the FDUTPA claim fails.
> The Court agrees.  Because the Court finds that the PJM Defendants co-owned the
> marks and that the federal and common law trademark infringement and unfair
> competition claims each do not state a claim for relief, the Court also finds that the
> Plaintiffs fail to state a FDUTPA claim.

(ECF No. 59 at 20).

 For the same reasons, the undersigned finds that the FDUTPA claim was inextricably

intertwined with the Lanham Act claim, and Defendants' request for fees under FDUTPA also

fails.

  **D.**  **Fees are Not Warranted under the DTSA/FUTSA**

 Count 15 of the Amended Complaint alleged violations of the DTSA against the PJM

Defendants.  In the Second Dismissal Order, the Court dismissed this count with prejudice.  (ECF

No. 192 at 12-13, 15).  Accordingly, Defendants are the prevailing party on this claim.  *See*

*Sodikart,* 2014 WL 6968073, at *3 (defendant who succeeds on motion to dismiss is prevailing party).

However, under the DTSA, a court may award reasonable attorneys' fees to a prevailing party only when a trademark misappropriation claim is made in "bad faith." 18 U.S.C. § 1836(b)(3)(D). Bad faith may be established by circumstantial evidence, or when a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated. *Id.* To meet the bad faith standard, a plaintiff's conduct must be "objectively specious or frivolous, and there must be evidence of subjective misconduct." *Knights Armament*, 2012 WL 3932863, at *4. Subjective misconduct is found to exist "where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit," and may be proven by direct evidence of actual knowledge or may be inferred from the speciousness of plaintiff's trade secret claim and its conduct during litigation. *Id.* at *4 (internal citations omitted).

Here, Defendants argue that Plaintiffs' claim for trade secret misappropriation was baseless. According to Defendants, although the First Dismissal Order dismissed the DTSA claim (Count 15, Amended Complaint) without prejudice, the Order nonetheless put Plaintiffs on notice of a missing element and gave Plaintiffs an opportunity to replead the claim to allege the reasonable steps taken to protect their trade secrets. (ECF No. 218 at 11). Defendants argue that, despite being given the opportunity to replead this count and include specific allegations on the missing element, Plaintiffs refiled the DTSA claim (Count 15, SAC) but again failed to include any allegations as to reasonable steps taken to protect their trade secrets. *Id.* Instead, Plaintiffs added language of their "after the fact" demand for Defendants' return of the customer list. The District Judge, however, found this insufficient and dismissed the claim with prejudice. (ECF No. 192

at 12-13) (Second Dismissal Order).  Defendants now argue that Plaintiffs' failure to describe the reasonable steps it took to protect its data reflects a "complete lack of evidence" on the trade secret claims and evidences Plaintiffs' "subjective misconduct" in that Plaintiffs knew (or recklessly failed to know) that their trade secret claims had no merit when they filed the SAC.  (ECF No. 218 at 12).  Thus, Defendants conclude that they "were forced to unnecessarily incur fees by Plaintiffs' refusal to voluntarily drop trade secret claims that were objectively specious."  *Id*. at 13.

In response, Plaintiffs assert that there is no evidence this claim was "objectively specious or frivolous."  (ECF No. 221 at 8).  In support, Plaintiffs cite to Temurian's deposition testimony regarding the misappropriation of the customer list.  (ECF No. 194-4) (Temurian Dep. 228:10-16, 234:4-8); *see also* (ECF No. 221 at 9).  Plaintiffs point out that the DTSA claim was not frivolous because they "genuinely felt they were wronged."  (ECF No. 221 at 9).

The issue here, however, is not whether Plaintiffs' client list was a trade secret, but whether Plaintiffs' took reasonable steps to protect it and other data.  Based on the record before the Court, Defendants have not met the high bar necessary to establish Plaintiffs acted in bad faith in realleging trade secret misappropriation in the SAC.  The undersigned's conclusion is supported by the language in the First Dismissal Order and the Second Dismissal Order.  In dismissing the trade secret misappropriation claim initially, the District Judge summarized Plaintiffs' arguments as follows:

> Plaintiffs argue that Defendants misappropriated Vista's customer list, which is a trade secret and allege that they took reasonable efforts to maintain the secrecy of the information "including, but not limited to, password protection, and restriction of access to essential personnel." ECF No. [33] ¶203.  Specifically, Plaintiffs allege that as part of the process of developing the Back Office, Plaintiffs gave the PJM Defendants *temporary special access* to Vista's information, including its customer lists, and that otherwise, the information was *password protected* and *accessible only by Vista's officers*.  *Id*. ¶28.  Plaintiffs further allege that they granted Defendant Johnson *one-time access to view* and understand the scope of data and that afterward, Plaintiffs *changed the password*, *restricting access* to only Vista's

officers.  *Id.* ¶28, n.4.  Thereafter, once the protected data was uploaded into the Back Office, it was *password protected* and Vista allowed access to the PJM Defendants for the purpose of *performing customer service only*.  *Id.* ¶31.

(ECF No. 59 at 22) (emphasis added).

As the highlighted sections in the above passage reflects, Plaintiffs recounted various steps they took to protect their data: password protection; restricting access to essential personnel; granting temporary special access; and granting limited one-time access to Defendant Johnson to view and understand the scope of data.  In the SAC, Plaintiffs attempted to provide additional facts regarding their efforts to protect their data, this time adding that Plaintiffs had requested that Defendants return the data.[13]  (ECF No. 71 ¶ 249).  Although the District Judge found Plaintiffs' allegations in the SAC still fell short, nothing in the record or the District Judge's order suggests that Plaintiffs' pleading was in bad faith, frivolous or specious, or meant to prolong the proceedings or harass the Defendants.  Defendants' summary accusations to the contrary are simply not enough to meet the high bar necessary to establish bad faith.  Moreover, although the District Judge ultimately disagreed as to the reasonableness and sufficiency of these steps and the allegations in the SAC, that is not the same as saying that Plaintiffs took no steps to protect their data or that the SAC was frivolous.  In the absence of evidence of Plaintiffs' bad motive or misconduct, this pleading deficiency does not establish objective or subjective bad faith, nor does the fact that Plaintiffs lost the motion to dismiss.[14]  *See Heald*, 2014 WL 4639410, at *6 n.16.  Thus, Defendants should not be awarded fees under the DTSA.

---

[13] Contrary to Defendants' argument, Plaintiffs' attempt to provide additional information in the SAC distinguishes the instant case from *Knights Armament*, 2012 WL 3932863 (finding bad faith when plaintiff persisted on its misappropriation claim despite knowing that it was time-barred).

[14] Plaintiffs' argument that the pleading error was made by their prior counsel is irrelevant to the undersigned's consideration.  *See* (ECF No. 221 at 9).

As to the FUTSA claim in Count 16 of the SAC, Defendants are not entitled to fees because they did not prevail on that count.  The First Dismissal Order dismissed Count 16 (FUTSA claim against the PJM Defendants) without prejudice.  (ECF No. 59 at 20-24).  Plaintiffs realleged Count 16 in the SAC (adding additional defendants), but it was again dismissed for lack of jurisdiction in the Second Dismissal Order.  (ECF No. 192 at 13-15).  However, neither a dismissal without prejudice (as in the First Dismissal Order) nor a dismissal for lack of jurisdiction (as in the Second Dismissal Order) inures Defendants with "prevailing party" status.  *See, e.g., Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199, 1205-06 (11th Cir. 2012) (holding that plaintiff was not "prevailing party" because the district court's granting of defendant's motion to dismiss . . . for lack of subject matter jurisdiction was not an "award [of] a judgment in [plaintiff's] favor"); *see also S. HVAC Corp. v. Konforte*, No. 618-CV-1589, 2019 WL 918972, at *2 (M.D. Fla. Feb. 8, 2019), *report and recommendation adopted*, No. 618-CV-158-9-ORL-37TBS, 2019 WL 913372 (M.D. Fla. Feb. 25, 2019) (holding that dismissal for lack of subject matter jurisdiction was without prejudice, and consequently did not give defendants prevailing party status); *Interim Healthcare Inc. v. Suncoast Loving Care, LLC*, No. 18-60766-CIV, 2018 WL 6620314, at *3 (S.D. Fla. Nov. 28, 2018), *report and recommendation adopted*, No. 18-60766-CIV, 2018 WL 6978625 (S.D. Fla. Dec. 28, 2018) (dismissal of state law claims for lack of subject matter jurisdiction did not make defendants the prevailing party because there was no adjudication on the merits or alteration of the legal relationship between the parties).  Accordingly, since Defendants did not prevail on the FUTSA claim, they are not entitled to fees under the statute.

Having determined that Defendants are not entitled to fees, the undersigned next considers whether Defendants are entitled to recover taxable costs pursuant to Rule 54.

### E.     Defendants are Entitled to Recover Costs

Pursuant to Rule 54, unless a federal statute, the federal rules, or a court order provides otherwise, costs should be allowed to the prevailing party.  Fed. R. Civ. P. 54.  Thus, for purposes of Rule 54(d), a prevailing defendant is presumed to be entitled to recover its costs unless there is a stated reason to deny the costs.  *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995); *see also, Quinto v. Universal Parking of Fla., LLC*, No. 15-21055-CIV, 2016 WL 8740232, at *2 (S.D. Fla. June 10, 2016), *report and recommendation adopted*, No. 15-21055-CV, 2016 WL 8739322 (S.D. Fla. June 30, 2016) ("The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined-the court must award costs unless it states good reasons for denying them.") (citation and internal alterations omitted); *see also U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) ("Prevailing parties are entitled to receive costs under [Rule] 54(d).").  Moreover, although the Court has discretion to award those costs specifically enumerated in 28 U.S.C. § 1920, the Court may not tax as costs items not authorized by the statute.  *See, e.g., Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

Having prevailed on the Lanham Act, FDUPTA and DTSA claims, Defendants seek $12,263.72 in taxable costs, which include: fees for service of summons and subpoena ($600.00); fees for printed or electronically recorded transcripts ($11,597.42); and fees and disbursements for printing ($66.30).  *See generally* (ECF Nos. 215, 216).

Plaintiffs oppose the award of costs.  First, Plaintiffs argue that the motion for costs is untimely under Local Rule 7.3(c).[15]  (ECF No. 217 at 2-4).  Plaintiffs also argue that an award of costs would be unfair because some costs were caused by delays over which Plaintiffs had no

---

[15] This argument has already been rejected.  *See* III.A., *supra*.

control, such as tactical or legal errors by their prior counsel and the Court's own schedule.[16] *Id.* at 4-6. Plaintiffs also argue that, to the extent Defendants can be considered to have prevailed, Plaintiffs also prevailed in that the Court permitted the voluntary dismissal of their case, so that neither party prevailed and "everyone should just walk away." *Id.* at 6. Alternatively, Plaintiffs argue that if the Court is inclined to award costs, then the Court should reduce Defendants' requested costs based on Plaintiffs' financial condition. *Id.* at 7.

Plaintiffs' arguments are unpersuasive. First, Rule 54 creates a presumption in favor of awarding costs to a prevailing party. *Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000). Defendants clearly prevailed on various counts of both the Amended Complaint and the SAC, *see supra* III.B., C and D, and Plaintiffs have not overcome that presumption. Further, although Plaintiffs' financial condition is a factor that the Court may consider, it is not determinative of whether costs should be awarded to the prevailing party pursuant to Rule 54(d). *Id.* at 1039 (noting that in awarding costs, a court should not consider the relative wealth of the parties). Rather, a party seeking to avoid paying costs must present a sound basis and substantial documentation of a true inability to pay. *See, e.g.*, *Morris v. Precoat Metal*s, No. 2:11-CV-0053-SLB, 2013 WL 830868, at *7 (N.D. Ala. Mar. 4, 2013) (noting that substantial documentation includes more than "self-serving statements that [one] is unable to pay the costs sought.") (citations omitted). Here, Plaintiffs have not provided any evidence to substantiate their claimed inability to pay. Plaintiffs' conclusory statements are insufficient to overcome the presumption in favor of an award of costs. Thus, the undersigned recommends that Defendants be awarded costs under Rule 54 as a prevailing party.

---

[16] Both these arguments lack merit and need not be addressed further.

The Court next considers whether the claimed costs are recoverable. Although Rule 54(d) creates a strong presumption that the prevailing party will be awarded costs, such costs may not exceed those permitted by 28 U.S.C. § 1920. *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007) (citations omitted). The losing party bears the burden of demonstrating that a cost is not taxable. *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (internal citations omitted). Nonetheless, the prevailing party "still bears the burden of submitting a request for [costs] that would enable the Court to determine what [costs] were incurred and whether [the prevailing party] is entitled to them." *Ferguson v. N. Broward Hosp. Dist.*, No. 10-61606-CIV, 2011 WL 3583754, at *3 (S.D. Fla. Aug. 15, 2011) (citation omitted); *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335-36 (S.D. Fla. 2000); *see* S.D. Fla. L.R. 7.3(c) (requiring that bill of costs include copies of documentation reflecting amount of costs and a supporting memorandum).

Under 28 U.S.C. § 1920, the Court may tax as costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Here, although the Motion for Costs refers to invoices purportedly "attached to the Bill of Costs," *see e.g.*, (ECF No. 216 at 2, 3), the invoices are not attached. Nonetheless, Defendants'

Memorandum in support of the Bill of Costs provides some information for the undersigned to determine recoverable costs.  (ECF No. 216).

### 1.  *Fees for Service of Summons and Subpoena*

Defendants seeks a total of $600 for service of three subpoenas.  (ECF No. 216 at 2). Although Plaintiffs do not contest the cost of service of the subpoenas, the undersigned has an independent responsibility to ensure that the costs do not exceed those permitted by 28 U.S.C. § 1920.  In relevant part, 28 U.S.C. § 1920(1) permits the court to award fees for private service of process, so long as these costs do not exceed the fees permitted by statute.  *Monelus*, 609 F. Supp. 2d at 1332-33; *see also Guerra v. Ameri-Clean Pumping, Inc.*, No. 18-22998-CV, 2019 WL 1859243, at *4 (S.D. Fla. Apr. 25, 2019).  The Court is also guided by the statutory limit set forth in 28 C.F.R. § 0.114, which provides that fees charged by the United Sates Marshals Service for personal service of process are $65 per hour.  *See also Monelus*, 609 F. Supp. 2d at 1333.

Here, Defendants have not provided the Court with back-up documentation or sufficient information as to these costs.  (ECF No. 216 at 2-3).  For example, the undersigned cannot determine whether the rate charged exceeded the rate charged by the U.S. Marshals Service.  *See W&O, Inc.*, 213 F.3d at 624.  In addition, Defendants state that one of the recipients evaded service, requiring multiple unsuccessful attempts to effect service.  (ECF No. 216 at 3).  Because of the lack of supporting documentation, however, the undersigned cannot determine the number of failed attempts or the fee charged for each attempt.  Accordingly, the undersigned recommends that Defendants be awarded $65 for each subpoena recipient, for a total of $195.

### 2.  *Fees for Printed or Electronically Recorded Transcripts for Use in Case*

Next, Defendants request $11,597.42 in transcript fees for multiple depositions.  (ECF No. 216 at 3-4); *see also* (ECF No. 215 at 1) ("Bill of Costs").  Plaintiffs summarily oppose these deposition costs, arguing that the depositions were ultimately not needed because the District

Judge denied Defendants' motion for summary judgment as moot (based on the voluntary dismissal). (ECF No. 217 at 7). Other than this general cursory argument, Plaintiffs do not specify which deposition transcripts were unnecessary or why.

Deposition costs are generally taxable as long as they were "necessarily obtained for use in the case." *See W&O*, 213 F.3d at 620; *McDaniel v. Bradshaw*, No. 10-81082-CIV, 2011 WL 6372788, at *2 (S.D. Fla. Dec. 20, 2011) ("in determining whether the cost of a particular deposition is taxable, 'the district court must evaluate the facts of each case and determine whether all or any part of a copy of any or all of the depositions was necessarily obtained for use in the case.'"). In determining the necessity of a deposition, the deposition must only appear to have been reasonably necessary at the time it was taken. *See W&O*, 213 F.3d at 620-21. Moreover, the court has great latitude in determining whether a deposition was necessarily obtained for use in the case or was obtained merely for the convenience of the attorneys. *McDaniel*, 2011 WL 6372788, at *2 (citation omitted).

Defendants' motion in support of the Bill of Costs summarizes each witnesses' role in the litigation and the relevance of their testimony. *See* (ECF No. 216 at 4). Based on record before the Court, Defendants' description of each witness's' testimony, and Plaintiffs' failure to specifically object to any of the deposition transcripts, the undersigned finds that the transcripts were necessarily obtained for use in the case. Notably, a deposition may still have been necessarily obtained for use in the case even though the case ultimately did not go to trial and even if the transcript was not cited in a dispositive motion. *Hersh v. United States*, No. 17-14212-CIV, 2020 WL 3089089, at *2 (S.D. Fla. May 26, 2020), *report and recommendation adopted*, No. 17-14212-CIV, 2020 WL 3088963 (S.D. Fla. June 10, 2020). Thus, for the reasons discussed above, the undersigned finds that these deposition transcripts were necessarily obtained for use in

the litigation and not for mere convenience.

Nonetheless, because only the prevailing parties can substantiate the cost of the transcripts, they bear the burden of demonstrating that the full cost is taxable. Here, Defendants failed to submit any invoices that would confirm the cost or the reasonableness of the fees. As such, the undersigned recommends that Defendants' transcript costs be reduced by one-third ($3,865.81). Accordingly, Defendant should be awarded $7,731.61.

### 3. Fees and Disbursements for Printing

Lastly, Defendants seek $66.30 for copies of deposition exhibits, and again reference an invoice that is not attached to the Bill of Costs. (ECF No. 216 at 4-5). Plaintiffs do not specifically oppose these charges. "Whether a prevailing party may recover costs for deposition exhibits depends on the purpose of the copies and, in particular, whether the party otherwise had access to the exhibits." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV, 2015 WL 11197752, at *4 (S.D. Fla. Dec. 29, 2015), *report and recommendation adopted,* No. 14-60268-CIV, 2016 WL 3944034 (S.D. Fla. Feb. 2, 2016) (citing *Micotel Inns and Suites Franchising, Inc.*, No. 11-60509-CIV, 2012 WL 158763, at *6 (S.D. Fla. May 4, 2012)). However, the prevailing party cannot recover the cost of deposition exhibits that were made merely for the convenience of counsel, and "the burden rests on the prevailing party to show the requested costs are recoverable." *Id.*, citing *Robinson v. Alutiq–Mele, LLC*, 643 F. Supp. 2d 1342, 1354 (S.D. Fla. 2009).

According to Defendants, the costs were for copies of deposition exhibits to be used at the California depositions of Hector Ardon, Luis Amaya, and Houry Tartarian. (ECF No. 216 at 5). No further information is provided. Accordingly, the undersigned cannot determine whether these copies were necessary, rather than convenient and recommends that these costs be denied.

In total, the undersigned recommends that Defendants be awarded a total of $7,926.61 for the cost of the deposition transcripts ($7,731.61) and the service of three subpoenas ($195).

## IV.     <u>RECOMMENDATION</u>

Accordingly, the undersigned respectfully **RECOMMENDS** that Defendants' Motion for Attorneys' Fees (ECF No. 218) be **DENIED** and Defendants' Motion for Costs be **GRANTED IN PART** (ECF No. 215).

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Moreover, failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R.  3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on March 3, 2021.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:    U.S. District Judge Rodney Smith
All Counsel of Record